Terence M. FRACASSA

v.

John F. DORIS, Jr., et al.

No. 2001–158–Appeal.

Supreme Court of Rhode Island.

Jan. 29, 2003.

Kelly M. Fracassa, Providence, for Plaintiff.

Jason D. Monzack, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case came before the Supreme Court on October 30, 2002, on appeal from a judgment by a justice of the Superior Court sitting without a jury that denied specific performance of a real estate contract to the plaintiff, Terence M. Fracassa (Fracassa or plaintiff), for property owned by the defendant, M. Priscilla Doris (Mrs. Doris or defendant) and her son, John F. Doris, Jr. (John or defendant).

This case arose from the failure of the parties to perform a contract for the purchase and sale of a summer home in the town of Narragansett, Rhode Island, and owned by defendants. The plaintiff is an attorney engaged in the practice of law in this state and defendants are the owners of an improved parcel of land at 32 Withington Road, in the Bonnet Shores section of Narragansett. The contract for the sale of this property was negotiated by the parties without the assistance of a real estate agent or broker.

The facts in this case were very much in dispute. The plaintiff testified that Mrs. Doris first offered the property to him for $190,000, but then increased the price to $195,000. The plaintiff testified that when he presented a letter of intent to purchase the property at each of the stated prices Mrs. Doris rescinded the offer. Although John had an interest in the property, Mrs. Doris testified that she had authority from him to make decisions concerning the property, and she negotiated the agreement with plaintiff. According to plaintiff, the parties eventually agreed on a price of $205,000. Mrs. Doris's testimony about the negotiations differed from plaintiff's; she said that she rejected plaintiff's initial

offer of $200,000, at which point plaintiff offered $203,000. Mrs. Doris said that when she countered with $205,000, plaintiff accepted.

The defendants retained the services of Frank Caprio, Jr. (Caprio), an attorney who was acquainted with plaintiff, the two having attended the same high school. At Caprio's suggestion, plaintiff drafted an agreement that established a closing date of November 21, 2000, and also included a time-is-of-the-essence provision. According to plaintiff, this clause was inserted for his benefit and to prevent defendant from another contract rescission in anticipation of a higher price. The agreement also contained an addendum that, if signed, would have included the furniture and personal property contained in the cottage. The testimony disclosed that Caprio thoroughly explained all contract provisions to defendants before they signed the agreement on September 21, 2000. The agreement called for a $5,000 deposit that was refundable if the parties failed to close. Unfortunately, a subsequent appraisal set a market value of $190,000 for the property, $15,000 less than the sale price. An inspection report also indicated that the property needed repair and renovation for use as a year-round residence. Predictably, plaintiff, by written correspondence with Caprio, sought a price adjustment. Mrs. Doris refused to repair the property or reduce the sales price.[1]

Notwithstanding the appraisal and inspection report, plaintiff applied for a mortgage, and scheduled the mortgage closing date for November 21, 2000, the day the parties had agreed to close. The reason the parties failed to close on November 21, 2000, was a hotly contested issue at trial. The plaintiff testified that it

---

1. At trial, plaintiff testified that he was pleased to discover that there were no material defects in the dwelling and that he would never require defendants to repair the property as a contingency to closing.

was defendants, through Caprio, who requested an extension of the closing date in order for them to remove their personal belongings from the dwelling. Mrs. Doris flatly denied making any requests to delay the closing date and testified that as far as she was concerned, after the closing date passed, the first agreement was "dead." John testified that his mother was in the process of moving to an assisted living facility and was ready and able to perform on November 21, 2000. John insisted that the closing was delayed because of plaintiff's inability to secure financing and was not caused by the failure of defendants to remove furniture from the dwelling. According to John, one week before the closing date, defendants were notified that the sale would not go forward as scheduled and, they therefore were not obliged to remove the furniture before the aborted closing date. John testified that after November 21, 2000, he had no confidence in Fracassa's credibility or his ability to perform the contract. He testified that he considered the agreement to have expired and that the parties were working toward a new agreement. He changed the locks on the property and suggested to his mother that an increased and nonrefundable deposit was required for the parties to enter into a new contract. This new provision was included in both the second and third proposed agreements; however, neither he nor his mother signed those documents. Finally, Caprio testified that plaintiff had requested a closing date sometime in the spring and that his clients had been ready to close on November 21, 2000. According to Caprio, when it became clear that defendants would not lower the sales price based on the adverse inspection report, Fracassa requested that the closing be postponed. However, Caprio testified

that "for that, we would need to enter into a new agreement[ ]" and "[t]hat's in fact what we tried to do." The November 21, 2000 closing date, as provided in the agreement, passed and the parties never entered into a second agreement.

Although Fracassa admitted at trial that he did not have his financing in place on November 21, 2000, he insisted that his inability to obtain a financing commitment was not the reason the parties failed to close. The record discloses, however, that plaintiff was required to furnish a financing commitment ten days before the closing date and that the only document plaintiff produced was dated November 22, 2000, one day after the scheduled closing, in which the lender notified plaintiff that financing was approved but contingent upon compliance with certain conditions. Specifically, "prior to final loan approval," plaintiff was required to produce an appraisal with a value of $205,000, satisfy some outstanding debts, and produce a signed rental agreement for his primary residence in Cranston verifying a monthly rent of not less than $1,000 per month.[2]

At trial, plaintiff testified that the parties had agreed to reschedule the closing for December 15, 2000, but that this date was postponed, again, at the request of defendants because of a continuing issue concerning their personal property. Both Mrs. Doris and John testified that they knew nothing about a December closing date and that no one advised them that Fracassa intended to close on December 15. However, Fracassa admitted that it was at this point—sometime in early December—that he and Caprio discussed a closing date of April 2, 2001, and a larger, nonrefundable deposit.

---

**2.** A written lease, dated January 4, 2001, was produced at trial. However, its validity was disputed by defendants. The lessee proved to

be a close personal friend of plaintiff who had signed the lease, but had neither moved into the property nor paid any monthly rent.

The record discloses that Fracassa drafted a new agreement that deleted the time-is-of-the-essence provision, amended the deposit provision to provide for a $10,000 nonrefundable deposit, and deleted the mortgage and inspection contingency provisions. This new agreement provided for a closing date of April 2, 2001, and was delivered to Caprio in December. Fracassa denied that he intended the revamped agreement to replace the original contract; rather, in lieu of drafting a short extension agreement, he chose a more comprehensive document because he "figured that would just be the simplest way." It is undisputed that defendants rejected the April closing date. Fracassa alleges that they rejected the date but not the sale of the property.

According to plaintiff, the parties agreed after a three-way telephone conversation to a closing date of February 1, 2001, and a third agreement was prepared by plaintiff and hand-delivered to Caprio on December 20, 2000, with the February 1 closing date. Further, Fracassa represented in writing that he had deposited the additional $5,000 in a client escrow fund. Fracassa admitted at trial that he never placed any money in a separate escrow account. Although defendants were represented by counsel, after he delivered the third agreement to Caprio, Fracassa contacted Mrs. Doris directly and alleges that during this conversation on December 21, 2000, Mrs. Doris orally agreed to close on January 20, 2001. At trial, Mrs. Doris testified as follows:

"Q So, as of that point you and Terry agreed to close this—the sale of 32 Withington Road on January 20th of 2001, is that correct?

"A Mm hmm.

"Q And the sale price would be $205,000, is that right?

"A That's right.

"Q So, essentially, the terms to which you had agreed to sell the property to Terry as of that December 21 conversation: Property is 32 Withington Road in Narragansett, Rhode Island, the sellers are Priscilla and John Doris, the buyer is Terrence [sic] Fracassa, and the purchase price is $205,000, is that correct?

"A That is correct.

"Q Crystal clear about that?

"A Yes."

Fracassa testified that he assumed that Mrs. Doris had before her the third draft agreement with the February 1, 2001 closing date and he instructed Mrs. Doris to cross out the February date and fill in January 20, 2001, or any date she wanted, and initial it. On the basis of this conversation, plaintiff insists that the parties were not negotiating a new contract, but merely agreed to reschedule the closing date. However, Caprio, apparently unaware that his client had been approached by Fracassa, forwarded to Mrs. Doris the third proposed agreement with a closing date of February 1, 2001. Mrs. Doris denied that she and Fracassa were trying to find a closing date, but rather, she was working through her attorney and "waiting for a brand new proposal" and that she never received an agreement that was acceptable to her. Upon receipt of an agreement with a February 1, 2001 closing date, she became angry and immediately contacted a real estate broker who had previously expressed an interest in the property and signed an agreement with another buyer.

At trial, plaintiff argued that at the time defendants contracted to convey the property to a different buyer, the original agreement, executed on September 21, 2000, was a valid and enforceable contract.

The defendants, on the other hand, argued that the September agreement had terminated; that for a closing to occur they required a new agreement with different terms, including a larger, nonrefundable deposit, that was never accomplished.

The trial justice found that on November 21, 2000, the date for performance by both parties, the plaintiff had not secured financing and that some questions remained about moving the furniture. He noted that the deposit was not returned, but the parties "apparently negotiated a new closing date sometime in December, which, again, it was not complied with." The trial justice noted that the parties then negotiated a second agreement, dated December 11, 2000 that included the original $5,000 refundable deposit, but eliminated contingency clauses for financing and inspection and made no provision for the furniture. He found that this second agreement was prepared by plaintiff with a closing date of April 2, 2001, a date that was unacceptable to defendants.

In what he described as "a travesty of events," the trial justice found that after some further negotiations, a third agreement, again dated December 11, 2000, was delivered to Caprio. This third agreement provided for a closing date of February 1, 2001, and required a $10,000 nonrefundable deposit, but was in all other respects identical to the second agreement. The trial justice noted that the parties "privately discuss[ed] at that point a closing date other than February 1[,2001,]" and agreed to close on January 20, 2001; however, Mrs. Doris received a new agreement in the mail with a February 1, 2001 closing date.

The trial justice rejected the argument that after the closing date passed, the only issue between the parties was a new date. He concluded that "the reality is we have three separate agreements;" the first contained a mortgage contingency clause that plaintiff did not meet until January 2001. He then declared, "so, you're not really talking about the first agreement; you're talking now about the second agreement." He found that when the second agreement was prepared and delivered to Caprio, plaintiff had not complied with the mortgage contingency provision contained in the first contract and was not in compliance when he and Mrs. Doris orally agreed on a January 20 closing date. The trial justice concluded that the second agreement, which the parties insisted "be signed before anything was completed between them," contained an April 2 closing date that was not acceptable to Mrs. Doris, and therefore she never signed it. Finally, he found that defendants did not sign the third agreement. The trial justice concluded that a written agreement was required by the parties and was never accomplished. He was satisfied that plaintiff and Mrs. Doris never reached a complete agreement on all essential matters pertaining to these latter contracts. The trial justice denied plaintiff's request for specific performance, and entered judgment in favor of defendants.

On appeal, plaintiff alleges that although the original contract included a time-is-of-the-essence provision, it did not terminate when the closing date passed; rather, it remained an enforceable contract with a new closing date. The defendants, on the other hand, insist that Fracassa was not ready to close on November 21, 2000, and the contract lapsed on that date. The defendants deny that they agreed to a new date in December and insist that the failure to perform the original contract was caused by plaintiff's inability to secure financing. The defendants point to the finding by the trial justice that plaintiff's financing was not completed and the fact that the contract included a time-is-of-the-

essence provision. Further, defendants argue that as a result of the inspection report, plaintiff raised issues about several deficient conditions at the property that defendants refused to cure and, in accordance with paragraph 12 of the agreement, plaintiff was required to waive these deficiencies in writing. The defendants maintain that Fracassa's failure to provide a written waiver renders the contract null and void. However, the trial justice failed to address these arguments.

In his bench decision, the trial justice specifically found that plaintiff did not comply with the financing provisions in the agreement, that questions remained about moving the furniture, and that after the date for performance of the agreement passed, the deposit was not refunded. He then noted that the parties "apparently negotiated a new closing date sometime in December," but that this date passed and plaintiff's financing was still not in place. Although he found that the parties never entered into a subsequent agreement, he did not find that the original contract had expired and was no longer a valid and enforceable agreement. Although the trial justice found that there were three separate agreements and declared that "you're not really talking about the first agreement[,]" we are satisfied that he failed to make adequate findings of fact relative to the first contract.

It is well settled that specific performance of a real estate contract "is not a matter of right, but rests in the sound discretion of the trial justice." *Griffin v. Zapata*, 570 A.2d 659, 661 (R.I.1990) (quoting *Jakober v. E.M. Loew's Capitol Theatre, Inc.*, 107 R.I. 104, 114, 265 A.2d 429, 435 (1970)). When a purchaser of real estate under a written contract can demonstrate that he or she was at all times ready and willing to perform the contract, specific performance is available "in the absence

of a legitimate and articulable equitable defense." *Thompson v. McCann*, 762 A.2d 432, 436 (R.I.2000). Moreover, a written agreement for the sale of realty may be modified by the parties subsequent to its execution. *Berube v. Montgomery*, 463 A.2d 158, 160 (R.I.1983). The statute of frauds does not require a writing for an extension of time to perform the contract. However, as defendants have argued, paragraph 14 of the original contract prohibits any amendments or modifications unless executed in writing by both the buyer and the seller. It is undisputed that no written amendment or modification to the September agreement was produced at trial. Fracassa bore the burden of demonstrating to the satisfaction of the trial justice that the original contract did not expire on November 21, 2000, and that the parties agreed to a new closing date of January 20, 2001. Fracassa also bore the burden of proving that on January 20, 2001, he was ready and able to perform and that he had satisfied each condition set forth by the financing agency, including an appraisal of the property with a value of $205,000 and a valid lease of the Ausdale Road property.

Additionally, this contract included a provision declaring that time is of the essence. "[C]ontract provisions relating to time do not by their mere presence in an agreement make time of the essence * * * so that the breach of the time element will excuse nonperformance by the other party." *Safeway System, Inc. v. Manuel Bros., Inc.*, 102 R.I. 136, 145, 228 A.2d 851, 856 (1967). This Court has recognized "the indisputable right of parties to make time of the essence in their contracts," and where those terms are present, the time fixed for performance is a material part of the contract and is applicable to the obligations of both parties. *Id.* (citing *Hicks v. Aylsworth*, 13 R.I. 562 (1882)). Howev-

er, like any other provision to a contract, time is of the essence may be waived by express agreement or impliedly by conduct that contributes to the delay in performance. *Thompson,* 762 A.2d at 437. On appeal, defendants have argued that the time-is-of-the-essence provision provides additional support for finding that the original contract expired. The defendants argue that it was Fracassa who violated this provision by failing to secure financing and close the purchase on November 21, 2000. We note, however, that at the close of plaintiff's case, the trial justice denied defendant's motion to dismiss and concluded that time for performance was not an integral part of the contract and was not an essential contract term. However, in his bench decision, the trial justice failed to address the time-is-of-the-essence provision or find that this term was waived, expressly or impliedly by either party.

■ Accordingly, we are satisfied that the trial justice correctly found that the second and third proposed contracts had not been signed by defendants and were not binding upon them. We agree with the trial justice that these draft agreements constituted new proposals with different contract terms and were not signed by the parties to be charged. However, we are constrained to conclude that the resolution of this appeal turns on whether the original contract with a closing date of November 21, 2000 expired upon the inability of plaintiff to perform on that date or a different date. Although the trial justice found that Fracassa had failed to obtain financing in time for the November closing date, he failed to specifically determine whether the first contract terminated or remained valid subject to a new closing date, and whether the parties did or did not agree to a new date for performance of the contract.

Therefore, this case is remanded to the Superior Court for findings of fact in respect to the original contract that set November 21, 2000 as the time for performance. Specifically, the trial justice shall determine whether, based on the failure of the parties to perform on that date, the contract expired or whether the parties entered into an oral agreement to close on another date and if so, whether plaintiff was ready and able to close on that date.

For the reasons set forth herein, the plaintiff's appeal is sustained in part and denied in part. The judgment is vacated and the papers in this case are remanded to the Superior Court with directions to conduct a hearing and make findings of fact in accordance with this decision.

Justice LEDERBERG participated in all proceedings but deceased prior to the filing of this opinion.