[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This matter came on for trial before the Court without a jury. Plaintiff, James A. Duckworth ("Mr. Duckworth") seeks specific performance of a Purchase and Sales Agreement.
 Findings of Fact.
Defendants, Dennis A. Burkholder and Cynthia Burkholder ("Mr. and Mrs. Burkholder") are the owners of unimproved property located on Briarwood Drive, in Charlestown, Rhode Island ("the property").
In April 2001 the parties entered into a written Purchase and Sales Agreement wherein Mr. and Mrs. Burkholder agreed to convey the property to Mr. Duckworth for the sum of $137,900.00 by August 24, 2001.
The Purchase and Sales Agreement required a deposit of $13,800.00, which was paid by Mr. Duckworth and held in escrow by a real estate broker. The Agreement also indicated that if the property was not conveyed by August 24, 2001, 25% of the deposit would be retained by Mr. and Mrs. Burkholder.
The sale was not contingent upon Mr. Duckworth receiving financing, but it was contingent upon Mr. Duckworth's receipt of the necessary governmental approvals for construction of the dwelling and septic system design.
On August 21, 2001, Mr. Duckworth had not yet purchased the property but agreed to release $3450.00 of the deposits to Mr. and Mrs. Burkholder. The funds were delivered to Mr. and Mrs. Burkholder.
In October of 2001 Mr. Duckworth had still not purchased the property and the relationship became more strained. Mr. Duckworth was still seeking to obtain governmental approvals. Another writing was entered into, referencing the original Purchase and Sales Agreement. The October Agreement released $6900.00 of additional deposit funds to Mr. and Mrs. Burkholder, allowed Mr. Duckworth to clear and market the property, but did not set a new closing date.
In November of 2001 Mr. Duckworth had still not purchased the property and no closing date had been scheduled. When Mr. Duckworth requested an extension, Mr. Burkholder declared him in default of the Agreement, demanding a closing by November 30, 2001.
In November and December 2001 closings were requested by Mr. and Mrs. Burkholder, but not scheduled. The Burkholders obtained counsel, Lawrence Cappuccio, who rejected any extensions unless a closing date was firmly established and time was of the essence.
On December 12, 2001 the parties executed a new addendum to the purchase and sales agreement. The closing was set for January 10, 2002 and "Time is of the essence." The remaining $3,450.00 of deposit funds were released to Mr. and Mrs. Burkholder and an additional $2,000.00 non-refundable option was released to Mr. and Mrs. Burkholder.
By December 12, 2001, Mr. Duckworth was willing to accept the property in its current condition and requested additional time "to assemble my money."
On December 12, 2001, Mr. Duckworth also signed an unconditional release, agreeing "should his default occur, James A. Duckworth agrees to refrain from any legal action of any kind."
In January 2002 Mr. Duckworth's counsel scheduled the closing in her office for January 10, 2002 at 3:00 p.m. This time was assented to by both attorneys, Mr. and Mrs. Burkholder and Mr. Duckworth.
On January 10, 2002 at about 11:00 a.m., Mr. Duckworth telephoned Attorney Cappuccio indicating that he did not yet have the financing[1] and would not be able to close on that day. Mr. Duckworth requested another closing date.
On January 10, 2002, at about 2:00 p.m., Mr. Duckworth telephoned Attorney Cappuccio and requested an extension. Mr. Duckworth indicated he would not close as he had insufficient financing. By that time, Mr. Duckworth's attorney had cancelled the 3:00 p.m. closing and Mr. Duckworth instructed Attorney Cappuccio not to attend the 3:00 p.m. closing. Attorney Cappuccio then instructed Mr. Duckworth to contact Mr. Burkholder for any extension, as Attorney Cappuccio had no authority to agree to a further extension. Attorney Cappuccio and Mr. Duckworth both recognized that it was unlikely that Mr. Burkholder would agree to an extension and that the agreement would be over if Mr. Duckworth could not perform by 3:00 p.m.[2]
Mr. Duckworth attempted to contact Mr. Burkholder during the afternoon of January 10, 2002, to no avail. At about 4:45 p.m., Mr. Duckworth left Mr. Burkholder a message saying he could not close and asked for an extension to the next Tuesday. Upon receipt of this message, Mr. Burkholder called Attorney Cappuccio to report the message, and to indicate that Mr. Duckworth did not have the money.
No additional extensions were agreed to by Mr. Burkholder or Mrs. Burkholder on or after January 10, 2002.
Resigned to the fact that the closing would not take place, Mr. Burkholder left his home after 4:45 p.m. on January 10, 2002.
Because Mrs. Burkholder was unable to attend a closing on the afternoon of the January 10, 2002, Attorney Cappuccio received an executed deed and power of attorney in advance. These documents were held by Attorney Cappuccio. Mr. Burkholder had not signed a power of attorney.
At approximately 5:00 p.m. on January 10, 2002, Mr. Duckworth's attorney spoke with Attorney Cappuccio for the first time, regarding the closing. Mr. Duckworth's attorney requested a 6:00 p.m. closing, but Attorney Cappuccio indicated that Mr. Burkholder was not available at this time. Mr. Duckworth's attorney then faxed a letter to Attorney Cappuccio indicating that Mr. Duckworth was ready, willing and able to close on January 10, 2002, but would agree to close on January 11th, for Mr. Burkholder's convenience but Attorney Cappuccio did not reply to this letter.
Unbeknownst to Mr. Duckworth, his attorney (through an LLC) was providing the financing which he was applying for. Mr. Duckworth's attorney acknowledges that the financing was not approved before 4:30 p.m. on January 10th, and that no mortgage or note had been prepared for Mr. Duckworth to execute at the closing.
Mr. Duckworth was not ready, willing and able to purchase the property on January 10, 2002.
Mr. Duckworth had failed to act with due diligence to secure financing for the acquisition.
Mr. Duckworth's attorney appeared at Attorney Cappuccio's office on January 11, 2002, at the time she had selected. Mr. Duckworth was not present, nor had he executed any of the financing documents. To complete the closing, Mr. Duckworth needed over $130,000.00, but when his attorney arrived, she had only $60,000.00 available in a checking account, and none of Mr. Duckworth's funds. Mr. Duckworth was not present. None of the money available was collected (i.e. in cash, certified check and/or bank check as required by the Purchase and Sales Agreement).
Mr. Duckworth was not ready, willing and able to purchase the property on January 11, 2002.
In January 2002 Mr. Duckworth's attorney recorded a lis pendens on the title to Mr. and Mrs. Burkholder's property.
 Analysis
The parties entered into an agreement to purchase unimproved real estate. Although the parties agreed to close on a specific date and rescheduled the closing on several occasions, the property was never conveyed. Again and again, closing dates were agreed to by the parties, in writing. On each occasion, Mr. Duckworth, the prospective buyer, would ask for an extension shortly before the deadline. On each occasion, the sellers communicated their dismay. At first, the sellers took the unusual step of demanding payment (release of some deposit monies). By December 2001 all of the deposit funds had been disbursed to the sellers who had agreed to three separate continuances. Having agreed to sell their property by August, the plan was now spinning out of control. Mr. and Mrs. Burkholder retained counsel and established January 10, 2002, as a firm date with "time of the essence" expressly set forth in the writing.
"Time is of the essence" is a significant, accepted legal term both in real estate practice and in the law. It is a term which sets a concrete deadline. Not only is the term established by court precedent, see Fracassa v. Doris, 814 A.2d 357, 363 (R.I. 2003); Thompson v. McCann, 762 A.2d 432, 438 (R.I. 2000) and Hicks v. Aylsworth, 13 R.I. 562 (1882), it is also a term which was recognized by the witnesses here. Neither of the parties was a novice to the real estate field. Each of them realized this closing needed a firm deadline and had one. Having watched previous deadlines pass by, Mr. Burkholder insisted on a firm date now. Anxious to sell the land, it was reasonable for him to require a set date. This date, like so many others came and went. It was Mr. Duckworth who breached the agreement by, once again, missing the deadline.
Mr. Duckworth's counsel dictated that the closing would be held at 3:00 p.m. on January 10, 2002, and the Burkholders and their counsel arranged their schedules accordingly. On January 10, 2002, however, Mr. Duckworth reported that the closing would not take place as he had no mortgage commitment. Attorney Cappuccio responded that he had no authority to consent to an extension for his client and suggested that Mr. Duckworth contact a seller, Mr. Burkholder, directly.
As indicated, the sellers insisted that the closing would occur on January 10, 2002, and Mr. Duckworth knew this date was firm. The buyer declared he could not close. The agreement was at an end and both parties accepted this finality. At least until 4:30 p.m., (well after the set time), Mr. Duckworth continued to report that he could not close. No extension was given or would be given. Knowing Mr. Duckworth would not close, Mr. Burkholder left his home accepting the failure of the buyer. Nevertheless, it is Mr. Duckworth who now seeks specific performance, and placed a lis pendens on the property.
Our high court has consistently held that a party seeking specific performance of a real estate purchase agreement bears a heavy burden:
 When a purchaser of real estate under a written contract can demonstrate that he or she was at all times ready and willing to perform the contract, specific performance is available `in the absence of a legitimate and articulable equitable defense.' Fracassa v. Doris, 814 A.2d 357, 362 (R.I. 2003) quoting Thompson v. McCann, 762 A.2d 432, 436 (R.I. 2000).
 [A] party seeking specific performance of a real estate contract must show, inter alia, that the seller's title to the property was marketable at the time set for closing." King v. Knibb, 447 A.2d 1143, 1145 (R.I. 1982). Other requisites for a specific-performance action include: "the existence of a valid underlying contract," and "that the vendee tender the purchase price to the vendor at the [closing date]." . Gill v. Wagner, 813 A.2d 959, 964 (R.I. 2002) quoting 14 Richard R. Powell, Powell on Real Property, § 81.04[1][b] at 81-174-75 (2001)
Mr. Duckworth failed to show his ability to perform the contract at the deadline, or that he was ready or willing to purchase. To the contrary, the Court finds that he was not ready, willing and able. Mr. Duckworth has not met his burden of proof, making specific performance inappropriate. Specific performance of a real estate contract is not a matter of right, but of discretion. Fracassa v. Doris, 814 A.2d 357, 362 (R.I. 2003),Griffin v. Zapata, 570 A.2d 659, 661 (R.I. 1990) Jakober v.E.M. Loew's Capitol Theatre, Inc., 107 R.I. 104, 114,265 A.2d 429, 435 (R.I. 1970)). As Mr. Duckworth is responsible for the breach, specific performance should not be lie.
This case comes to the Court in a different context than many specific performance cases. The parties acknowledge the existence of a contract with numerous written amendments; they agree a deadline was set and they all knew the deadline. They bargained the specific language and focused on the deadline terms in the waning hours. Mr. Duckworth argues that the express January 10, 2002 date (expressly established with time of the essence) was not set in stone. Even in situations where the express language is not contained in the agreement, the Courts have been reluctant to loosen all deadlines. The sentinel case of Jakober v. E.M.Loew's Capitol Theatre, Inc., 107 R.I. 104, 115, 265 A.2d 429, 435 (R.I. 1970) espouses the courts' standards in viewing deadlines and granting specific performance.
 Ordinarily contract provisions relating to time do not by their mere presence in an agreement make time of the essence thereof so that a breach of the time element will excuse nonperformance. Safeway System, Inc. v. Manuel Bros., 102 R.I. 136, 228 A.2d 851; Sal's Furniture Co. v. Peterson, 86 R.I. 203, 133 A.2d 770. However, this principle does not mean that a party can be completely oblivious to a stipulation in a contract relating to time, but it assumes that a party to a contract will proceed in good faith towards the completion of his undertaking. A person cannot neglect the contractual provision of an agreement to suit his own convenience or profit.
 * * *
 It is apparent from the record that Jakober made no effort to be ready, able and willing as of April 9, 1961. While he testified at great length as to his desire to purchase the Loew parcel, Jakober offered no reasonable justification for his failure to proceed in a reasonable manner to be ready by the last day of the agreement. The diligence required of a plaintiff in a suit for specific performance was lacking in this case as was any genuine explanation for Jakober's complete inertia.
 Additionally, the actions of Jakober must be viewed with special care because the contractual obligations arising from the sales agreement were essentially all on the vendor's side. If the property was not rezoned, Jakober had an escape hatch which would permit him to walk away from the contract. It would be unreasonable to hold that a party who alone is fully committed to a contract should be bound thereto interminably. Accordingly, in such circumstances as are presented in the sales agreement before us, the specific time limits are more meaningful than in those situations where the obligations are bilaterally firm. Jakober, 107 R.I. at 114-115, 265 A.2d at 435, citations omitted.
Mr. and Mrs. Burkholder should not be expected to hold their property forever, in the hope that Mr. Duckworth may eventually purchase it. The parties had a written Purchase Agreement, extended it several times, and realized that Mr. Burkholder would wait no more. For this reason, the parties made the performance time of the essence in the final amendment. Mr. Duckworth recognized the agreement was over when he resignedly stated "You win some, you lose some" during the afternoon of January 10, 2002. The actions of the parties indicate that they recognized the agreement had been breached by Mr. Duckworth and was at an end.
The parties were entitled to make time of the essence, which makes the deadline for performance certain and definite. "Parties to a contract have an indisputable right to make time of the essence, and where those terms are present; the time fixed for performance is a material part of the contract and is applicable to the obligations of both parties." Fracassa v. Doris,814 A.2d 357, 363 (R.I. 2003) (citing Hicks v. Aylsworth,13 R.I. 562 (1882)). Mr. Duckworth has argued that time of the essence should not be held to his detriment in that he attempted to perform later that evening. To do so, would be to circumvent the reasonable, bargained-for terms of the writing. While time of the essence may be waived, it is done so only by agreement or conduct that contributes or assents to a waiver. Fracassa v. Doris,814 A.2d 357, 363 (R.I. 2003). That is not what occurred here. Mr. Duckworth acknowledged the certainty of Mr. Burkholder's position as of December 12. There was no assent to give him more time.
As stated, Mr. Duckworth admitted his failure during the afternoon. At 5:00 p.m. on January 10, 2002, Mr. Duckworth's attorney telephoned the sellers' attorney and insisted on an immediate closing. Mr. Duckworth's counsel was seeking to retrieve the deed at 6:00 p.m. Attorney Cappuccio replied that he could not release it, the deal was off and the sellers were now unavailable. The Buyer's attorney then set a closing for the next day.[3] Though the buyer's attorney claimed Mr. Duckworth was ready, willing and able to perform, the buyer did not know he was. More significant, the buyer's attorney did not have the closing funds available in collected funds (as required by paragraph 4 of the Purchase and Sales Agreement, nor did she have any mortgages, notes or closing documents drafted or signed by Mr. Duckworth).
Accordingly, not only had the agreement been repudiated by Mr. Duckworth already, but the buyer was never ready, willing and able to perform on January 10, 2002. Simply put, he never had the money. At the 3:00 p.m. deadline, the deal was called off. At 4:30 p.m., in hopes of reviving what was already lost, Mr. Duckworth's attorney unsuccessfully struggled to put together the financing. The suggestion that Mr. Burkholder is responsible for Mr. Duckworth's failure to close is neither accurate nor fair. Mr. Duckworth never had the money (on January 10th or 11th) and never had the loan documents drafted. To argue that Mr. Burkholder was in breach for leaving his home when Mr. Duckworth said he would not perform and was unable to perform, is a denial of personal responsibility.
Indeed, this case is quite analogous to Ouellette v.Filippone, 745 A.2d 161 (R.I. 2000), where the Court held a buyer had violated the terms of a Purchase and Sales Agreement by continuing to delay their purchase. There, the trial Court found that the buyer failed to act with due diligence by failing to timely apply for financing or follow through with a prospective mortgagee when a credit problem occurred. The Superior Court denied the buyer's claim to recover his deposit and the high court affirmed.
 Conclusion.
In this action, Mr. Duckworth has not established sufficient grounds for a grant of specific performance. In the midst of trial, Mr. Duckworth moved to amend his complaint to seek an award of damages. Based on the evidence, I find it is Mr. Duckworth who breached the contract. Accordingly, he is not entitled to an award of damages or specific performance.
Judgment shall enter for the Defendants, Dennis A. Burkholder and Cynthia A. Burkholder on all counts of the complaint. The lis pendens filed with the Charlestown Registry of Deeds on January 14, 2002, at 3:25 p.m., is vacated and quashed. The Defendant may submit appropriate orders.
[1] Mr. Duckworth testified that he could have closed on December 19, but this was not communicated to Mr. and Mrs. Burkholder. He developed financing problems thereafter.
[2] Attorney Cappuccio quotes Mr. Duckworth as stating "You win some, you lose some" during this conversation.
[3] Counsel for buyer dictated the time of the first closing, called off that closing on her own, insisted on the evening closing, and then scheduled a closing for the next day. All of this was done without the consensus of the seller's attorney. It was a posture of confrontation rather than cooperation and done at an inappropriate time. The practice of law is challenging enough without attorneys dictating terms to one another. Attorneys should afford respect to one another whenever possible. Indeed, how much of this controversy could have been avoided had a telephone call been made by buyer's counsel early in the day?