**Hugh FISHER**

v.

**Richard APPLEBAUM, Esq.,
as executor of the estate
of Esther A. Aiello.**

No. 2005–215–A.

Supreme Court of Rhode Island.

May 21, 2008.

James Moretti, Esq., for Plaintiff.

Richard A. Pacia, Esq., Pawtucket, for Defendant.

Present: WILLIAMS, C.J., and GOLDBERG, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on March 6, 2008, on appeal by the defendant, Richard Applebaum, Esq. (Applebaum), executor of the estate of Esther A. Aiello (estate or defendant), from a Superior Court judgment awarding specific performance of a contract for the sale of land to the plaintiff, Hugh Fisher (Fisher or plaintiff). For the reasons stated in this opinion, we affirm the judgment of the Superior Court.

### Facts and Travel

The plaintiff filed suit on September 29, 2003, alleging breach of contract arising from a purchase and sales agreement (PSA), in which plaintiff agreed to purchase property on Gordon Avenue in Warwick, Rhode Island.[1] The plaintiff alleged that he had complied with his contractual obligations but that defendant refused to perform the contract and convey the property. The plaintiff sought specific performance, as well as interest, fees, and costs.

The events giving rise to this litigation began when attorney Applebaum became involved in the estate of Esther Aiello in 1996 and opened a probate estate in an attempt to collect an unpaid funeral bill for his client, Quinn Funeral Home. The real property of the estate consisted of three contiguous unimproved parcels of real estate in Warwick.

After a hearing on April 26, 2001, the Warwick Probate Court entered an order on May 3, 2001, declaring that plaintiff's offer to purchase the property for $40,000 was "the most preferable in its terms and conditions, offering the highest price, and being equal to or in excess of [its] appraised value[.]" The order directed the estate to accept the offer "on May 4, 2001, or as soon thereafter as possible, unless a known heir" stepped forward on or before May 3, 2001, and offered to buy the property on "at least as favorable terms and conditions[.]" The heirs of the estate, Ed-

---

1. The property is identified as assessor's plat 361, lot Nos. 462, 463, and 464.

ward Aiello and Susan Carol Aiello Dix, did not meet those conditions.

On May 4, 2001, the parties entered into the PSA, in which Applebaum agreed to convey marketable title to the lots; the sale of which was subject to plaintiff's obtaining a building permit for a single-family home. All costs associated with obtaining the building permit were to be borne by plaintiff, and the closing was to take place within twenty days after the permit was issued.

On July 17, 2001, Fisher's attorney, Sanford J. Resnick (Resnick), notified his client and Applebaum that a title search revealed numerous problems with the titles, including the fact that each parcel had been sold at tax sales at various times. According to Resnick, these issues were complex, and a closing could not take place until they were resolved.

It is undisputed that lot Nos. 462 and 464 had been sold at separate tax sales but were available for redemption by the estate because the buyers failed to foreclose on the Aiellos' right of redemption. On August 3, 2001, Resnick notified Applebaum of the redemption costs and advised him that Fisher was willing to lend the estate the funds required to redeem the lots.

The title problems with respect to lot No. 463 presented greater difficulty. According to Resnick, lot No. 463 had been sold at a tax sale in 1963, when the interest of the estate of Margaret Helmick was sold to the City of Warwick for nonpayment of taxes. Resnick explained that since this sale occurred less than forty years ago, a petition to foreclose the right of redemption was necessary. The safe harbor provided by the Marketable Record Title Act (MRTA)[2] was not yet available because forty years had not passed from the time of the tax sale in 1963. Because that tax sale occurred when Charles Helmick and Margaret Helmick (Helmicks) were the fee owners, the Helmicks or their heirs had a right to redeem the lot.

The record discloses that Applebaum was concerned that, if he located the heirs, or otherwise attempted to foreclose the right of redemption to lot No. 463, these as yet unknown people might attempt to redeem the property. Notwithstanding, in a letter to the Warwick Probate Court, Applebaum declared his intention to honor the contract and acknowledged that plaintiff also wanted to close the sale.

Although Applebaum attempted to obtain financing to redeem the lots and kept Resnick informed of these efforts, the estate was unable to borrow the money and

2. The Helmicks' right of redemption could be foreclosed in one of two ways: by filing a foreclosure petition in Superior Court or by the passage of time in accordance with G.L. 1956 § 34–13.1–2:

"**Chain of title for not less than forty years creates marketable record title.** * * * Any person having legal capacity to own land in this state, who has an unbroken chain of title to any interest in land for forty (40) years or more, shall be deemed to have a marketable record title to that interest, subject only to the matters stated in § 34–13.1–3. A person has such an unbroken chain of title when the land records of the town in which the land is located dis-

close a conveyance or other title transaction, of record not less than forty (40) years at the time the marketability is to be determined, which conveyance or other title transaction purports to create such interest in land, or which contains language sufficient to transfer the interest, either in the person claiming that interest, or some other person from whom, by one or more conveyances or other title transactions of record, the purported interest has become vested in the person claiming the interest; with nothing appearing of record, in either case, purporting to divest the claimant of the purported interest."

the closing was delayed. By June 24, 2003, Resnick wrote to Applebaum about his client's frustration with unresolved title problems and warned Applebaum of possible legal action for specific performance. Notably, on August 15, 2003, forty years from the date of the tax sale, the MRTA became operable and served to clear the title to lot No. 463.

Throughout this period, as Resnick claimed in his letter to Applebaum on July 24, 2002, Fisher was "ready, willing and able to purchase the property[.]" The plaintiff retained an engineering company, obtained a building permit for a single-family dwelling, and received an assent from the Coastal Resources Management Council to construct the dwelling. Although Applebaum expressed his opinion that the tax-sale statutes were unconstitutional, the estate never attempted to rescind the PSA or refund the deposit. Fisher filed suit.[3]

■ The trial justice found that "the spectre of a defective title posed no impediment to Mr. Fisher's readiness, indeed eagerness, to close," and that Fisher acted diligently "despite daunting delays not attributable to him and permit processes not within his control." Moreover, the trial justice concluded that plaintiff "acted with due diligence and in good faith." She also found that plaintiff "peppered the [s]eller with requests to close on the property," and that this litigation was a last resort. Therefore, the trial justice concluded that specific performance was a fair and equitable remedy. She granted specific performance of the PSA and ordered that

defendant redeem any outstanding taxes from the sale proceeds. In accordance with the trial justice's decision, a closing was to take place within thirty days of the entry of judgment. The defendant filed an appeal on April 22, 2005,[4] and the parties thereafter stipulated to a stay, pending this appeal.

## Standard of Review

■ A party is not entitled to specific performance of a contract for the sale of land as a matter of right. The remedy of specific performance rests within the sound discretion of the trial justice. *Eastern Motor Inns, Inc. v. Ricci*, 565 A.2d 1265, 1269 (R.I.1989). We review the trial justice's decision granting specific performance under an abuse-of-discretion standard. *DePetrillo v. Lepore*, 871 A.2d 907, 909 (R.I.2005); *Fracassa v. Doris*, 876 A.2d 506, 509 (R.I.2005) (*Fracassa II*). The decision of the trial justice will not be disturbed on appeal absent an abuse of discretion or an error of law by the trial justice. *Eastern Motor Inns, Inc.*, 565 A.2d at 1269.

■ It is well established that the factual findings of a trial justice sitting without a jury are accorded great weight and will not be disturbed unless the record shows that the findings clearly are wrong or the trial justice overlooked or misconceived material evidence. *Burke–Tarr Co. v. Ferland Corp.*, 724 A.2d 1014, 1018 (R.I. 1999). We have concluded that, before specific performance of a real estate contract may be granted, the essential con-

---

3. At trial, the defense presented William Floriani, who testified that the subject parcels were valued at $100,000; however, the trial justice found that this evidence had "no bearing on the validity or enforceability of the underlying purchase and sales agreement," and she refused to consider this testimony. We agree.

4. Although judgment was not entered until April 25, 2005, this Court will treat a premature appeal as if it had been timely filed. *State v. Hesford*, 900 A.2d 1194, 1197 n. 3 (R.I.2006).

tractual provisions "must be clear, definite, certain, and complete[.]" *DePetrillo*, 871 A.2d at 909 (quoting *Caito v. Juarez*, 795 A.2d 533, 536 (R.I.2002)). Moreover, "[w]hen a purchaser of real estate under a written contract can demonstrate that he or she was at all times ready and willing to perform the contract, specific performance is available 'in the absence of a legitimate and articulable equitable defense.'" *Fracassa II*, 876 A.2d at 509 (quoting *Fracassa v. Doris*, 814 A.2d 357, 362 (R.I.2003) (*Fracassa I*)).

### Analysis

■ On appeal, defendant argues that the trial justice overlooked and misconceived the trial evidence because, he contends: (1) "Fisher and Resnick engaged in a series of machinations that sought to obfuscate the true state of affairs so as to unreasonably and unfairly delay the closing towards the end of satisfying Fisher's own pecuniary interests to the detriment of the Estate;" and (2) "as a matter of law * * * marketable title could not be conveyed at the time set for closing."

■ We begin our discussion by noting that, although defendant's brief purports to raise numerous arguments, these issues were not properly briefed for this Court's review. "Simply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue." *Wilkinson v. State Crime Laboratory Commission*, 788 A.2d 1129, 1131 n. 1 (R.I.2002). Accordingly, we shall address only those issues that are relevant and properly presented to us.

After careful review of the record in this case, we are satisfied that the trial justice made detailed findings about the credibility of the witnesses and evaluated the weight of the evidence. Moreover, although the parties did not execute an agreement extending the closing date, the facts establish that the parties agreed to postpone the closing date until the provisions of the MRTA barred any claim to lot No. 463.

■ The record before us demonstrates that the parties mutually agreed to a course of conduct designed to resolve the impediments to conveying marketable title. The evidence indicates that Applebaum was attempting to resolve the title problems and that plaintiff was pursuing the building permit. There was no testimony that defendant demanded performance earlier, and the weight of the evidence points to defendant as the source of the delays. Further, defendant did not attempt to rescind the PSA or insist on any performance or payment, and plaintiff was not given an opportunity to waive any defects. *See Yates v. Hill*, 761 A.2d 677, 680 (R.I.2000) (stating that, in a contract for the sale of real property, "[a] party may waive a condition precedent if the condition is included for the benefit of the waiving party"). Moreover, "the filing of suit for specific performance * * * implicitly waive[s] any of the sale conditions that were for the benefit of the party seeking such relief." *Id.* In the case before us, the evidence established that *both* sides continued to work toward a closing, while fully aware of the issues that had to be resolved.

Both Resnick's testimony and his written communications support the trial justice's finding that Fisher actively was pursuing the approvals needed for a building permit and that he offered to lend the estate money in order to redeem the lots. The trial justice correctly found that Fisher was working to perform the agreement but was thwarted by the permit-approval process and delays caused by the estate.

There is no evidence that the delay in performing this contract was caused by plaintiff or that plaintiff benefited from the delay to the detriment of the estate. Indeed, the evidence indicates that postponing the closing until the MRTA became operable served to bar any claim to lot No. 463, thus advancing the interests of both parties. Further, we are satisfied that time was not of the essence in this contract, and any suggestion to the contrary is incorrect. *See Thompson v. McCann*, 762 A.2d 432, 437 (R.I.2000) (determining that a contract provision that makes time of the essence may be waived by express agreement or by the conduct of the parties, and a seller may not rely on such a provision if the delay is attributable in whole or in part to the seller).

Finally, we are of the opinion that specific performance was an appropriate remedy in this case. The plaintiff was ready and willing to perform the contract, and there was no legitimate and articulable equitable defense. *See Fracassa II*, 876 A.2d at 509 (quoting *Fracassa I*, 814 A.2d at 362) (stating that "[w]hen a purchaser of real estate under a written contract can demonstrate that he or she was at all times ready and willing to perform the contract, specific performance is available 'in the absence of a legitimate and articulable equitable defense' ").

### Conclusion

For the reasons stated in this opinion, we affirm the judgment of the Superior Court. The papers in this case are remanded to the Superior Court.

Justice FLAHERTY did not participate.