**KEYSTONE PROPERTIES AND DEVELOPMENT, LLC**

v.

Steven A. CAMPO.

No. 2008–189–Appeal.

Supreme Court of Rhode Island.

March 5, 2010.

Susan M. Carlin, Lincoln, Esq., for Plaintiff.

Frederick A. Costello, Warwick, Esq., for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on December 8, 2009, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. The defendant-seller, Steven A. Campo (defendant), appeals from a Superior Court judgment in favor of the plaintiff-buyer, Keystone Properties and Development, LLC (Keystone) granting specific performance of a contract for the sale of real property. Because we are satisfied that cause has not been shown, we shall decide the appeal at this time. We affirm the judgment.

### Facts and Travel

In 2002, Keystone and defendant entered into a written purchase and sales agreement (agreement) in which defendant agreed to sell property located on Douglas Avenue in Providence, Rhode Island for

$9,000. The agreement followed the standard Rhode Island realtor's format and contained language that is dispositive of the issues in this case; including a date for closing on July 15, 2002. Paragraph 9 "title" stated in pertinent part:

"Seller covenants and warrants that it is the fee title owner of the Property and has the authority and capacity to enter into this Agreement and consummate the transaction contemplated herein. The Property is to be conveyed by a good and sufficient warranty deed of the Seller, conveying a good, clear, insurable, and marketable title to the Property, free from all encumbrances, except as may be acceptable to Buyer, and Buyer's Lender[.] * * * *If Seller is unable to remove such defects, Buyer shall have the option to: (a) accept such title as Seller is able to convey without abatement or reduction of the Purchase Price, or (b) cancel this Agreement and receive a return of all Deposits.*" (Emphasis added.)

Notably, although the date for performance was set forth in the agreement and had been postponed several times by agreement of the parties, the contract did not contain a clause declaring that "time was of the essence." Subsequently, on November 1, 2002, the parties met to close the sale. After the settlement papers and deed were signed, defendant informed Keystone and its representatives that he was indebted to his father and the property served as security for the loan from his father. The record discloses that Keystone's title attorney previously had completed a title search and discovered an outstanding mortgage to a bank and various liens related to the city, all of which

were discharged before the closing but none of which related to a loan from defendant's father. After defendant alerted the buyer to this unrecorded and undischarged potential encumbrance, the title attorney immediately stopped the closing, contacted the title insurance company, and informed the parties they could not proceed until any lien on the property was released. Although he wrote the word "void" across the closing documents, neither the title attorney nor Keystone declared that the agreement itself was void or otherwise repudiated.

Over the next year, efforts to reach defendant proved difficult. In January 2003, the title attorney returned the closing money to Keystone, but defendant's realtor kept the deposit. When the realtor attempted to return the deposit, Keystone refused to accept it.[1] Keystone retained a new attorney, who wrote to defendant explaining that Keystone was still interested in closing, in accordance with the agreement. In November 2003, approximately one year after the failed closing, Keystone filed a complaint in the Superior Court requesting specific performance and costs. Before trial, Keystone offered to purchase the property "as is" but only if defendant agreed to be responsible for any lien that might exist. After a jury-waived trial in the Superior Court, the trial justice granted judgment for Keystone for partial specific performance on February 20, 2008.[2]

In his decision, the trial justice relied upon our decision in *Lajayi v. Fafiyebi,* 860 A.2d 680 (R.I.2004), in which we declared that, "[a] grant of specific performance is appropriate when 'a party to a real estate agreement unjustifiably refuses or

---

1. In April 2004, the realtor issued a check to Keystone in an effort to return the deposit; Keystone, however, did not cash the check.

2. Specifically, the trial justice ordered that a closing take place, at which defendant was to tender a quit claim deed to Keystone and Keystone is to tender the sale price of $9,000.

fails to perform under the agreement.'" *Id.* at 686 (quoting *Yates v. Hill,* 761 A.2d 677, 679 (R.I.2000)). The trial justice also found that to qualify for specific performance concerning real estate under a written contract, the party must establish that "he or she was at all times ready and willing to perform the contract[.]" *Sturbridge Home Builders, Inc. v. Downing Seaport, Inc.,* 890 A.2d 58, 64 (R.I.2005) (quoting *Fracassa v. Doris,* 814 A.2d 357, 362 (R.I.2003) (*Fracassa I* )). Finally, the trial justice, in light of this Court's decision in *Lajayi,* found that Keystone had established a binding, enforceable contract; that plaintiff was ready to purchase the property; that the contract had not been rescinded; and that defendant had breached the agreement. Specifically, the trial justice found that paragraph 9 of the agreement required defendant to deliver "a good, clear, insurable, and marketable title to the Property, free from all encumbrances, except as may be acceptable to Buyer" and that, at the closing, defendant failed to do so. In addition to breaching that express obligation, the trial justice also found that defendant breached the implied covenant of good faith by ceasing to perform, ignoring Keystone's efforts to contact him, and expecting others to clear the title for him.

With regard to the money purportedly owed to his father, the trial justice briefly addressed the relationship between defendant and his father and the efforts (or lack thereof) to discharge the unrecorded lien:

"Mr. Campo's relationship with his father is somewhat mysterious. He testified that he did not know his father's current address, and they had not spoken for years. While the family is estranged, the Court is not convinced that Mr. Campo met his contractual obligation or the express commitment he made at the failed closing, to attempt to clear the title promptly. Mr. Campo acknowledged that the attorney who wrote the father's loan documents may have more information on the mortgage, or whether it was a mortgage, but he never contacted the attorney. He expected other people to clear this lien for him, and to call the attorney. As Mr. Campo admitted that he was still indebted to his father, contacting his father could have opened the door to collection of the debt. Accordingly, Mr. Campo appeared less than candid."

On appeal, defendant argues that the trial justice committed a reversible error by finding that the buyer remained ready and willing to perform the contract. The defendant asserts, in the alternative, that Keystone abandoned the contract by returning the deposit money. Finally, defendant contends that the trial justice also committed error when he found that the agreement was not rescinded; he draws our attention to the deposition testimony of the title attorney, in which the attorney testified that after the failed closing he considered the proposed sale to be dead. On the other hand, Keystone argues that the trial justice correctly found that the buyer was ready, willing, and able to perform the contract. Specifically addressing the deposition testimony, Keystone stresses that the testimony did not compel a finding that the agreement was rescinded. Keystone argues, and the trial justice concluded, that this language referred to the closing only, and not the agreement itself.

### Standard of Review

 We begin by noting the difficult burden that any appellant has when challenging the grant of specific performance because the remedy rests within the sound discretion of the trial justice. *Eastern Motor Inns. Inc. v. Ricci,* 565 A.2d 1265, 1269 (R.I.1989). When reviewing a trial justice's decision to grant specific performance, we do so under an abuse of discre-

tion standard, and we will not disturb that decision on appeal absent an abuse of discretion or error of law. *DePetrillo v. Lepore,* 871 A.2d 907, 909 (R.I.2005); *Eastern Motor Inns, Inc.,* 565 A.2d at 1269.

■ In *Fisher v. Applebaum,* 947 A.2d 248 (R.I.2008), we recently had occasion to review the findings of a trial justice in a jury-waived proceeding seeking specific performance, and we said: "[w]e have concluded that, before specific performance of a real estate contract may be granted, the essential contractual provisions 'must be clear, definite, certain, and complete[.]'" *Id.* at 251–52 (quoting *DePetrillo,* 871 A.2d at 909). If the purchaser can demonstrate that he or she was "at all times ready and willing to perform the contract, specific performance is available 'in the absence of a legitimate and articulable equitable defense.'" *Fracassa v. Doris,* 876 A.2d 506, 509 (R.I.2005) (*Fracassa II*) (quoting *Fracassa I,* 814 A.2d at 362).

Accordingly, our decision today is controlled by this standard of review, and we therefore affirm the judgment of the Superior Court. Upon careful review of the record and after oral argument in this case, we cannot conclude that the trial justice was clearly wrong or that he abused his discretion in granting specific performance in this case. It is not within our judicial province to substitute our own judgment for that of the trial justice in this admittedly close case.

### Analysis

■ Clearly, this decision turned on the credibility of the parties—buyer (Keystone) and seller (defendant)—and the testimony of the realtor and the title attorney, including the deposition and trial testimony of the title attorney. At trial, the title attorney for Keystone was asked whether he declared that the "deal was dead" after the closing was terminated; he testified as follows:

"I may have talked with him a few times about this and I may have, I believe I may have sent him a few letters as well because I did want to allow at least 60 days in which for this thing to work out after which time, after 60 days, I think it would be fair to conclude that the parties were either unable or unwilling to resolve the issue and *that the closing at that point would be dead.*" (Emphasis added.)

We reject defendant's argument that this language referred to the deal as a whole, rather than the closing. It is also equally clear to us that the trial justice made credibility determinations with respect to Keystone and defendant and found that Keystone did not abandon the agreement and was entitled to specific performance of the contract. We are satisfied that the trial justice made sustainable findings and evaluated the weight of the evidence before him; we decline to disturb these findings on appeal. *See Burke–Tarr Co. v. Ferland Corp.,* 724 A.2d 1014, 1018 (R.I.1999) ("The findings of fact by a trial justice sitting without a jury are entitled to great weight and shall not be disturbed on appeal unless the record shows that the findings are clearly wrong or unless the trial justice overlooked or misconceived material evidence * * *.").

Although in the context of this case, the length of time that has passed since the agreement was entered into by the parties gives us pause, we decline to hold that the passage of time, standing alone, is sufficient to warrant a conclusion that the agreement was abandoned. The duty to make such a finding rests with the trial justice, and we sustain the finding unless it is clearly erroneous. He declared that, "[t]he record is devoid of any intent on the part of Keystone to abandon the [a]gree-

ment. There was never a sign of reluctance, Keystone never backed off." *See Fisher*, 947 A.2d at 253 (finding that time was not of the essence in that contract and that any suggestion to the contrary was incorrect). It is not our function to second guess this determination.

Finally, the defendant asserts that Keystone was never ready, willing, and able to purchase the property. The record, however, is devoid of any facts that would have led the trial justice to agree with this assertion. The trial justice noted, "[t]here is, of course, no question that Keystone was ready, willing[,] and able to purchase through the date of the failed closing. There is no question that Keystone remains just as committed now." Again, we decline to disturb this sound finding without record evidence to the contrary. *See Fracassa II*, 876 A.2d at 509 (stating that "[w]hen a purchaser of real estate under a written contract can demonstrate that he or she was at all times ready and willing to perform the contract, specific performance is available 'in the absence of a legitimate and articulable equitable defense'") (quoting *Fracassa I*, 814 A.2d at 362).

### Conclusion

Accordingly, we affirm the judgment of the Superior Court. The record may be remanded to the Superior Court.