WILLIAM F. HICKS *et al. vs.* ELI AYLSWORTH *et als.*

A bill in equity to redeem was dismissed unconditionally by a decree consented to by the complainants after they had received from the respondents the following agreement, entitled of the suit:

"Agreed in the above case that the complainants are to have a deed from said trustees of all the interest of said W. B. and of said trustees, and a deed from Mrs. B. of all her interest in the premises described in said bill, free from any mortgage, for the sum of twenty-one thousand five hundred dollars, or in default thereof that the said trustees will pay the said complainants the sum of five thousand dollars in settlement of complainants' interest in said estate. Said complainants to have the option for the period of fifteen days to select whether they will take the estate upon the said terms or take the said money, said fifteen days to be of the essence of the contract." Dated March 27, 1878.

*Held,* that the decree was a final bar to the right to redeem.

*Held,* further, that under the agreement the complainants were entitled within fifteen days to buy the estate for $21,500, or, failing so to do, to receive the sum of $5,000.

*Held,* further, that a verbal consent to enlarge the period of fifteen days was invalid, being an attempt to vary a written instrument by a gratuitous oral contract.

*Held,* further, that the claim for $5,000, being a pecuniary debt, was subject to legal not equitable jurisdiction.

BILL IN EQUITY to redeem an alleged mortgage. The facts are stated in the opinion of the court.

*February* 4, 1882. DURFEE, C. J. This is a suit in equity purporting to be a suit to redeem. The estate in suit formerly belonged to one William Hicks, who, by divers deeds, executed between October, 1861, and November, 1866, conveyed it to one William Butler. The conveyances, though absolute on their face, are alleged by the complainants to have been intended as security for moneys lent, and to have been in legal effect mortgages. William Hicks died August 8, 1874. William Butler made a general assignment of his property for the benefit of his creditors to the defendants, Aylsworth and Browne, December 30, 1873. On October 31, 1876, the complainants, who are the children and heirs at law of William Hicks, commenced a suit in equity against the defendants, Aylsworth and Browne, to redeem the estate. The suit was assigned for trial March 27, 1878, on which day the

parties agreed to a settlement, by virtue of which the complainants consented to a decree dismissing the bill unconditionally, and the defendants gave the complainants an agreement, entitled of the suit, which reads as follows, viz.:

"Agreed in the above case that the complainants are to have a deed from said trustees of all the interest of said William Butler and of said trustees, and a deed from Mrs. Butler of all her interest in the premises described in said bill, free from any mortgage, for the sum of twenty-one thousand five hundred dollars, or in default thereof that the said trustees will pay the said complainants the sum of five thousand dollars in settlement of complainants' interest in said estate. Said complainants to have the option for the period of fifteen days to select whether they will take the estate upon the said terms or take the said money, said fifteen days to be of the essence of the contract.

"Witness our hands this 27th day of March, A. D. 1878.

"ELI AYLSWORTH, ⎫
"GEO. H. BROWNE, ⎬ *Trustees.*"

The decree, drawn up March 27, 1878, and left for entry with the defendants, was entered June 27, 1878. On April 11, 1878, the complainants elected to take the deed of the estate, and they not then having the money, it was orally agreed between them and the defendants, Aylsworth and Browne, that they should have fifteen days longer within which to make payment. The complainants failed to make payment as agreed. They allege that the time was again extended for fifteen days, and continually extended afterwards from time to time, they being all the while engaged in fruitless efforts to borrow the necessary money, until November 15, 1878, when, while they were still endeavoring to raise the money under extensions renewedly granted, the defendants Aylsworth and Browne, without notice to them, sold and conveyed the estate to the defendant Richardson for $26,500. The bill, filed in the present suit, alleges that Richardson was fully cognizant of the rights of the complainants, both under the conveyances of Hicks to Butler, and under the agreement of March 27, 1878, as extended, and claims that the complainants have the same right against him, which, but for the conveyance to him, they would have had against Aylsworth and Browne,

namely, a right to redeem on paying $21,500, with interest, which they offer to pay. The defendants, Aylsworth and Browne, deny that the complainants ever had any right to redeem, and maintain that the conveyances from Hicks to Butler were originally intended to be, what upon their face they purport to be, absolute. They also deny that they ever granted more than one extension of fifteen days, and maintain that afterwards they merely kept the offer open for the complainants in case they could raise the money before another purchaser, whom they were on the lookout for, could be found. The defendant, Richardson, denies having known that either the complainants or their father ever had any right to redeem, or that the complainants ever had any right to the estate other than by virtue of their agreement with Aylsworth and Browne, which he avers he understood they had lost by failure to raise the money within the time agreed.

We think the complainants, if they ever had the right to redeem, ceased to have it when they consented to the unconditional dismissal of their former suit in consideration of the agreement of March 27, 1878, given them by the defendants; for, in the contemplation of a court of equity, the suit must be regarded as then dismissed, though the decree of dismissal was not entered until afterwards. By that decree their right to redeem, if any they had, was absolutely and forever barred. *Foote* v. *Gibbs,* 1 Gray, 412; *Borrowscale* v. *Tuttle,* 5 Allen, 377; *Ogsbury* v. *La Farge,* 2 N. Y. 117; *Byrne* v. *Frere,* 2 Molloy, 157; *Powers* v. *Chelsea Savings Bank,* 129 Mass. 44. The settlement was manifestly intended to be in lieu of a judicial trial and decision, and therefore, even if such a decree were not ordinarily conclusive without hearing, the decree here must be taken as of the same effect as a decree after hearing on the merits. It follows that the only rights which the complainants had in regard to the estate in suit, after March 27, 1878, were the rights secured to them by the agreement of that date.

The rights which the complainants had under the agreement, as we construe it, were, first, a right to buy the estate for $21,500, within or at the end of fifteen days; and, second, failing that, a right to have the defendants pay them five thousand dollars for their interest, or, in other words, for consenting to the decree of

dismissal. The agreement was in effect an agreement on the part of the defendants to pay the complainants five thousand dollars for the right or claim of right to redeem, which they had relinquished, with the privilege to them of taking the estate instead of the five thousand dollars, by paying $21,500 for it, at the end of fifteen days. Two questions arise in the present case under the agreement: to wit, can the complainants maintain their suit as a suit for or in the nature of a suit for specific performance, to compel the defendants to give them the benefit of the privilege; and, if not, can they maintain it as a suit for the recovery of the five thousand dollars.

*First.* Can the complainants maintain the suit as a suit to enforce the privilege? The privilege, if our construction of the agreement be correct, was strictly limited to fifteen days. It expired, if not availed of, when the fifteen days expired. To avail themselves of it, the complainants were required to pay or tender payment of the $21,500. They did not do it, and, therefore, forfeited their privilege. They were in default, and under the agreement had no right to anything but the five thousand dollars. The defendants, however, agreed to renew the privilege for a second term of fifteen days. We do not see how this could avail the complainants, for it was an attempt to alter, by a gratuitous oral contract, a material stipulation of a written agreement within the statute of frauds, which is not allowable either at law or in equity. The complainants contend that it was allowable on two grounds. First, they contend that the construction which we have given the agreement is not correct. They contend that the period of fifteen days was the period, not for the acceptance of the privilege by paying or tendering the $21,500, but simply for election by the complainants whether they would accept or not, and that, having elected to accept within the fifteen days, they were entitled to a further reasonable period to consummate their acceptance. We do not think the agreement will bear this construction. Under the agreement the complainants were to have the estate if they would pay $21,500 for it, or, if not, they were to have five thousand dollars for their interest. It was important for the defendants to know whether they were going to take the estate or not, for if they were not, it behooved the defendants

to be on the lookout for other purchasers. It seems probable that it was mainly in this view that the clause limiting the option to fifteen days was added. Now if to elect to take were sure to result in actual taking, the construction contended for by the complainants might be reasonable; but plainly the complainants might elect to take and yet not take, leaving the estate after all to be sold by the defendants. The restriction to fifteen days would amount to nothing if it referred only to an election, and the complainants were to have a reasonable time to take after electing; for without the restriction they would have only a reasonable time both to elect and take. The familiar phrase, that time is of the essence or not of the essence of a contract, refers to the time for performing it; and, therefore, when a contract makes time of its essence, the presumption is that it means the time for performance; or, if it relates to an option, the time for taking, and not merely electing to take, the benefit of it.

The second ground on which it is contended that the alteration was allowable is, that it only applied to time for accepting the option, and that, in equity, time is not regarded as material or as of the essence of the contract. It is true equity does sometimes treat time as not essential, especially if the parties themselves so treat it, though the later decisions are stricter than the earlier. In this State the court has leaned heavily to the sterner side. *Ives* v. *Armstrong*, 5 R. I. 567. And for a case at law, see *Ladd* v. *King*, 1 R. I. 224. It has been held that the rule is exceptionally strict, where, as here, the time relates to an option. Fry on Specific Performance, §§ 721, 733. But, however the rule may ordinarily be, parties have an indisputable right to make their own contracts, and the parties here have made time of the essence; and, therefore, the contract in respect of it being purely executory, a court of chancery, in the absence of fraud, mistake, or accident, can no more dispense with it than it can make a new contract in any other particular for the relief of either party. Here no fraud, accident, or mistake is shown. The unreadiness of the complainants to accept the option was not attributable to any fault or contrivance of the defendants. The extension of the time was, therefore, simply a gratuitous oral concession, which, if permitted,

would materially alter a written contract within the statute of frauds.

Our opinion is, therefore, that in point of law the suit in this aspect of it cannot be maintained. But, supposing the view which we are induced to take of the law is too rigid, can it be maintained in point of fact? It is admitted that after the expiration of the first term of fifteen days, the parties agreed to a second term of fifteen days as the time within which the complainants were to obtain the money and pay for the estate. If then the complainants were entitled to a reasonable time, after the expiration of the first fifteen days, for making payment, they thus agreed to fifteen days as such time. At the end of that time they had not obtained the money, and were in default, and, being in default, they only had a right to the five thousand dollars. The complainants, however, say that the defendants again extended the time for fifteen days, and reëxtended it continually until or nearly until the estate was sold. This the defendants deny, and the burden of proof is on the complainants. We do not think they satisfactorily establish their allegation. It seems to us improbable that the defendants would go on granting extensions of fifteen days for seven' months. It also seems improbable to us that the defendants, who so carefully limited their first extension, and who were in pressing need of the money, would afterwards fetter themselves by an indefinite extension. And, finally, it seems to us not improbable that the defendants did, as they say they did, namely, refused to grant any extension after the first, but only kept open an offer to the complainants to sell to them for $21,500, in case they brought the money before any other purchaser could be found. We think, therefore, that even taking the view of the contract for which the complainants contend, they fail to show that they still have a right to take the estate for $21,500, and interest.

In what precedes we have treated the case broadly on its merits, but considering it strictly as a suit for specific performance, it is difficult to see how it can be maintained on technical grounds; for the complainants have never tendered, nor been ready to tender, and are not to-day, so far as appears, ready to pay the money required. Waterman on Specific Performance, § 439.

*Second.* Can the suit be maintained as a suit for the five thousand dollars? The defendants contend that it cannot, because the complainants, by electing to take the estate, ceased to have a right to the five thousand dollars. We do not accept that view. Under the agreement, the complainants were to have the estate for $21,500, or, in default thereof, the five thousand dollars, which means that they were to have the five thousand dollars in default of actually having, and not merely of electing to have, the estate. They could not relinquish the five thousand dollars without consideration, which they have never had, since the extension of the time, which is the only consideration they could have had, if indeed, being oral, it could avail for a consideration, was confessedly gratuitous. The five thousand dollars were, however, to be paid to the complainants in settlement of their interest; that is to say, this sum was to be paid for the interest, actual or claimed, which they surrendered to the defendants when they consented to the decree of dismissal. It is, therefore, money due for a consideration already received; or, in other words, it is simply a pecuniary debt recoverable at law, and, being such, a suit in equity cannot be maintained for it. The bill must be dismissed with costs for the defendants, but without prejudice to the right of the complainants to sue at law for the five thousand dollars.

*Decree accordingly.*

*James M. Ripley & George Fuller,* for complainants.

*James Tillinghast,* for respondents.