**Barbara B. HAYDON**

v.

**Leon G. STAMAS et al.**

**No. 2005–173–Appeal.**

Supreme Court of Rhode Island.

June 21, 2006.

Peter S. Haydon, Esq., East Greenwich, for Plaintiff.

Jeffrey C. Schreck, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., and GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice SUTTELL, for the Court.

The defendants, Leon G. Stamas and his son, Leon Stamas, appeal from a judgment of the Superior Court striking their notice of *lis pendens* on real estate owned by the plaintiff, Barbara B. Haydon, and rejecting their counterclaims for specific performance and breach of contract.[1] At the center of this contract dispute is the viability of an oral modification purportedly extending the time in which the defendants could exercise an option to purchase a tract of land from the plaintiff. This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be decided summarily. After considering the written and oral submissions of the parties and examination of the record, we are of the opinion that this appeal may be decided at this time without further briefing or argument. For the following reasons, we vacate the judgment of the Superior Court and remand the case for further proceedings in accordance with this opinion.

## Facts and Procedural History

At a hearing on October 14, 2004, the parties agreed to have the trial justice decide plaintiff's complaint and defendant's counterclaims on the basis of the deposition testimony of Ms. Haydon, Mr. Stamas, and his attorney in the real estate transaction, Kathleen DiMuro, as well as certain documents and stipulated facts. Such evidence reveals the following events.

Mr. Stamas first expressed an interest in purchasing land from Ms. Haydon at some point in December 2003 or January 2004. Ms. Haydon disclosed that the property, on Crestwood Road in Warwick, Rhode Island, had other suitors, but nevertheless arranged for Jeffrey Bard, a real estate salesman with whom she was acquainted, to negotiate a sales price with Mr. Stamas. Mr. Bard informed Mr. Stamas that the property was generating rather sizable interest, and recommended that he submit his best offer to conclude the sale, which amount Mr. Stamas then determined to be $179,000. Finding the younger Mr. Stamas in the circumstances of this case, we will not address him as a separate defendant, and, throughout the course of our opinion, will refer exclusively to the elder Mr. Stamas.

---

1. It appears from the record that the involvement of Leon Stamas in this case is limited to his role as an agent for and on behalf of his father in signing the underlying agreement. Because of the inconsequential role of the younger Mr. Stamas in the circumstances of this case, we will not address him as a separate defendant, and, throughout the course of our opinion, will refer exclusively to the elder Mr. Stamas.

amount acceptable, Ms. Haydon prepared an agreement on February 8, 2004, with the assistance of Mr. Bard, which agreement was signed the next day. The February 9 agreement provided in full:

"This document confirms receipt of $2,000[ ] from Leon Stamus [sic ], as a good faith deposit for purchase of Lot # _242_, Plat # _235_currently owned by: Purchase Price for Lot 242 = $179,000. Barbara Haydon, of 81 Crestwood Road[ ] (property has had ground water analysis by R.I. DEM, dated 4.10.00, copy attached)[.] Deposit is valid to hold property off the for sale market, contingent on a 'purchase & sales' agreement signed by both parties by Feb. 23, 2004. Deposit will be returned and property will be placed back on [p]ublic market if said 'purchase & sales' agreement is not executed by 2.23.04."

Mr. Stamas was in Miami, Florida, on the date of the signing, however, and he directed his son to pay the requisite deposit and sign the agreement in his stead.

Mr. Stamas returned to Rhode Island on February 17, 2004, but again departed for Florida, on February 21. During his brief interlude in Rhode Island, Mr. Stamas contacted Ms. Haydon to inform her that his lawyer, Kathleen DiMuro, currently was vacationing out of state, but would return on Monday, February 23. On Monday morning, Ms. DiMuro telephoned Ms. Haydon to discuss the purchase-and-sales agreement. Ms. Haydon did not answer, so Ms. DiMuro left a detailed message on her answering machine identifying herself as Mr. Stamas's attorney, explaining that she was in the process of drawing up the purchase-and-sales agreement, and requesting a return telephone call.

Ms. DiMuro prepared the purchase-and-sales agreement, and, having yet received no return telephone call, called Ms. Haydon again at approximately 4 p.m. on the same day. This time Ms. Haydon answered the call, and Ms. DiMuro informed her that she had prepared the purchase-and-sales agreement, which she would send to Mr. Stamas by overnight mail that afternoon. Ms. Haydon largely confirmed the substance of Ms. DiMuro's telephone call, indicating that: "[Ms. DiMuro] told me that she had just returned from vacation, that she had gotten together all of the paperwork regarding the transaction, the sale of my property to Mr. Stamas[, t]hat she would execute the necessary paperwork and overnight it to Mr. Stamas." Ms. Haydon also informed Ms. DiMuro that her attorney, John Comery, would review the proposed purchase-and-sales agreement before it was signed, and would prepare the deed of sale. When Ms. DiMuro inquired whether she could fax Mr. Comery a copy of the proposed purchase-and-sales agreement, Ms. Haydon responded in the affirmative. Notably, during her deposition, Ms. Haydon testified as follows in response to questions by defendant's lawyer:

"Q. * * * I think you said Ms. DiMuro said that she would prepare the purchase and sales agreement; she would overnight it to Mr. Stamas, who was in Florida, and would fax a copy of it to Mr. Comery, is that correct?
A. That's correct.
Q. Okay. And what did you say to her?
A. 'Okay.'"

According to Ms. DiMuro, she in turn told Ms. Haydon that Mr. Stamas would sign and return the purchase-and-sales agreement on Tuesday, February 24, via overnight mail. Further, Ms. DiMuro would forward the signed purchase-and-sales agreement to Mr. Comery once she obtained it from Mr. Stamas.

Soon after speaking with Ms. Haydon on Monday, February 23, Ms. DiMuro faxed a copy of the proposed purchase-and-sales

agreement to Mr. Comery and sent two copies to Mr. Stamas by overnight mail. On Tuesday morning, February 24, Mr. Comery called Ms. DiMuro to point out a typographical error on page one of the purchase-and-sales agreement "attributing an expense to the seller that should be a buyer's expense." Ms. DiMuro testified that she acknowledged the error, but because both attorneys agreed that "everyone was anxious to get it signed," and because the error was not on the signature page, Ms. DiMuro had Mr. Stamas sign the copies containing the error. When Ms. DiMuro received the agreement Mr. Stamas signed, she corrected the typographical error on page one and sent an envelope containing the otherwise identical documents to Mr. Comery by regular mail on Wednesday afternoon, February 25. The envelope, however, was postmarked Thursday, February 26, and Mr. Comery did not receive it until Monday, March 1.[2]

Meanwhile, during the late afternoon of Thursday, February 26, Ms. Haydon learned from her real estate agent, Roxanne Trafuri, that another buyer, later identified as Centerville Builders, was interested in acquiring the subject property. Ms. Haydon responded: "Roxanne, if you can get me a purchase and sales agreement for two hundred thousand dollars with the buyer paying your commission, I will execute it. I will sign it." The next day, Friday, February 27, at approximately 9 a.m., Ms. Haydon signed a purchase-and-sales agreement with Centerville Builders for a purchase price of $200,000. Fifteen minutes before executing the agreement, Ms. Haydon left a message at Ms. DiMuro's office informing her that she was signing an agreement with another buyer. At her deposition, Ms. Haydon elaborated upon the substance of the message:

"[I]t was a courtesy phone call. I just wanted to let her know that, since I hadn't received anything, that the option had run. I had had no contact from anyone, that I was going to go ahead. I was executing a purchase and sales agreement at nine, nine o'clock, that I had gotten two hundred thousand dollars for the property, that that was twenty-one thousand dollars more than Mr. Stamas had offered, and that since Mr. Stamas wasn't going to pay me a dollar over a hundred and seventy-nine thousand dollars, I didn't think that it was worth waiting to have him counteroffer on the property, and that twenty-one thousand dollars was a lot of money."

Upon hearing the message that morning, Ms. DiMuro immediately called Mr. Comery, who, because Ms. Haydon had not informed him of Thursday night's developments or Friday morning's events, was unaware that Ms. Haydon intended to sign, and ultimately did sign, another purchase-and-sales agreement. Mr. Comery later called Ms. DiMuro, confirming that Ms. Haydon had executed a purchase-and-sales agreement with another buyer, and indicating that Ms. Haydon would return Mr. Stamas's deposit of $2,000.

Thereafter, Mr. Stamas filed a notice of *lis pendens* in the records of land evidence for the city of Warwick notifying prospective purchasers of the February 9 agreement. Consequently, on March 17, 2004, Ms. Haydon filed the instant action in Superior Court, seeking: (1) a temporary restraining order preventing Mr. Stamas from interfering in the sale of the property to a third party; (2) a preliminary and permanent injunction to remove the cloud of title on plaintiff's property; and (3) damages, costs, and attorney's fees. Mr.

**2.** The year 2004 was a leap year.

Stamas answered and filed counterclaims for specific performance of Ms. Haydon's obligations under the February 9 agreement and breach of contract for her failure to fulfill those obligations. On April 26, 2004, a motion justice entered an order denying Ms. Haydon's request for a temporary restraining order. On October 14, 2004, the parties appeared before another justice of the Superior Court for a hearing on the motions for preliminary and permanent injunctions and on defendant's counterclaims. At the hearing, the parties agreed to have the trial justice decide the matter based on the depositions and documents submitted, and they stipulated to certain facts not at issue on appeal.

The trial justice issued a written decision on December 1, 2004, striking the notice of *lis pendens* and rejecting defendant's counterclaims. The analytical component of the decision began by recognizing the primacy of the issue concerning the purported oral modification that allegedly occurred as a result of the telephone conversation between Ms. DiMuro and Ms. Haydon. The trial justice said that for that issue to be resolved, she would be required to resolve two "subsidiary matters." Addressing the subsidiary issues, the trial justice first determined that the February 9 agreement was not an agreement for the conveyance of land in and of itself, but an option contract. To support this conclusion, the trial justice noted that the agreement did not detail the terms of payment, which is an essential term of a valid purchase-and-sales agreement under the statute of frauds; she further found that the parties did not intend that the agreement would bind Mr. Stamas to purchase the property, but rather intended that the agreement would give him the exclusive power to do so for a limited period. Next, the trial justice found that, because time is generally of the essence in option contracts, and because the Febru-

ary 9 agreement twice referred to an expiration date of February 23, 2004, "it would be against the weight of the evidence to maintain that time was not of the essence in this option agreement."

■ Having determined that the February 9 agreement was an option contract in which time was of the essence, the trial justice then considered the primary issue before the court, which issue, in the trial justice's own words, was "whether an oral extension of an option agreement to purchase real property is enforceable." The trial justice reasoned as follows:

"Although the Defendant argues that the Plaintiff agreed to extend the date for the execution of a Purchase and Sales Agreement, the record before the Court does not substantiate this argument. In the Plaintiff's deposition testimony, she stated that she said 'okay' in response to Ms. DiMuro's tentative timeline for the production of the Purchase and Sales Agreement. Although she did agree to review a proposed Purchase and Sales Agreement, the Plaintiff never expressly stated that she would extend the deadline set forth in the option agreement. After the expiration of the option, the Defendant was not foreclosed from purchasing the Property. However, after February 23, 2004, the Plaintiff was no longer obligated to hold the Property off the market. Even assuming the Plaintiff's 'okay' sufficiently manifested her intention to extend the option deadline, the Court holds that an oral extension of an option deadline in a written option to purchase real estate is not enforceable."

The trial justice then concluded that "[b]ecause the timeliness of an option contract is its central component, the expiration date of an option cannot be modified orally." Judgment was entered on December

29, 2004, striking the *lis pendens,* denying defendant's request for specific performance, and ordering defendant to execute all documents necessary to remove the cloud on plaintiff's title; this appeal ensued.[3]

## Discussion

The defendant advances three arguments on appeal. First, defendant argues that the February 9 agreement is an enforceable contract for the sale of land. To support this contention, he challenges the trial justice's application of the statute of frauds to the February 9 agreement because the later purchase-and-sales agreement that Mr. Stamas signed provided for cash payment. Next, defendant opines that, even though the February 9 agreement contained a specific deadline, the parties did not explicitly provide in the agreement that time was of the essence. Finally, he contends that Ms. Haydon orally agreed to extend that deadline and thus waived, to the extent that it even existed, any assertion that time was of the essence.

The plaintiff, disputing defendant's characterization of the February 9 agreement as an enforceable contract for the sale of land, argues that the absence of terms of payment demands the application of the statute of frauds. Although the later purchase-and-sales agreement that Mr. Comery received on March 1, 2004, provided for payment by cash or check, plaintiff argues that "these facts cannot be assumed [because] the original option agreement contained no method of payment, only the price." Consequently, plaintiff contends, the February 9 agreement and any subsequent extension of the option to purchase must have been in writing to be enforceable. Alternatively, plaintiff argues that, even if it is outside the statute. of frauds, the option contract contained a time-is-of-the-essence clause that called for the purchase-and-sales agreement to be signed by both parties, if at all, on or before February 23, 2004. Because of defendant's failure to exercise his option by February 23, 2004, and because, as plaintiff claims, "[n]either Ms. DiMuro * * * nor Ms. Haydon said anything about extending the option agreement," plaintiff urges this Court to affirm.

### The Nature of the February 9 Agreement

We begin the inquiry, as did the trial justice, by examining the nature of the February 9 agreement between Ms. Haydon and Mr. Stamas. Because this task requires that we interpret the provisions of the February 9 agreement, which interpretation is a question of law, our review is *de novo. Lajayi v. Fafiyebi,* 860 A.2d 680, 686 (R.I.2004). On review, it has long been the practice of this Court to view a contract in its entirety, assigning to its terms their plain and ordinary meanings as the manifestation of the parties' intent. *See, e.g., The Elena Carcieri Trust–1988 v. Enterprise Rent–A–Car Co.,* 871 A.2d 944, 947 (R.I.2005); *Lajayi,* 860 A.2d at 686. "If the contract terms are clear and unambiguous, judicial construction is at an end for the terms will be applied as written."

---

**3.** Although not stated in the judgment itself, it appears that the trial justice intended to grant partial final judgment pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure, because both the decision and the judgment indicate that plaintiff's request for damages and counsel fees remained open. In any event, the matter is properly before this Court because an order striking a notice of *lis pen-* *dens* is appealable. *Gill v. Wagner,* 813 A.2d 959, 960 n. 1 (R.I.2002). Further, although defendant filed a notice of appeal on December 21, 2004, several days before judgment was entered, the premature notice of appeal nevertheless was valid. *See, e.g., Glavin v. City of Providence,* 857 A.2d 758, 759 n. 1 (R.I.2004) (mem.).

*Rivera v. Gagnon*, 847 A.2d 280, 284 (R.I. 2004).

█ A review of the February 9 agreement reveals no ambiguity. In consideration of a refundable deposit of $2,000, Mr. Stamas purchased an option to buy Ms. Haydon's property, which option, under the terms of the agreement, must have been exercised, if at all, by February 23, 2004. The agreement forbade Ms. Haydon, as optionor, from selling the property to another buyer until the option term of fourteen days expired, during which term Mr. Stamas, as optionee, retained the exclusive power, but not obligation, to purchase Ms. Haydon's property. Mr. Stamas could exercise that power, however, and thus his option, only after fulfilling a condition precedent, which, as the agreement provided, was the execution of a signed purchase-and-sales agreement.

Accordingly, we agree with the trial justice's finding that, on February 9, Ms. Haydon and Mr. Stamas entered into an option contract, and not a contract for the sale of land. We affirm, therefore, the judgment to the extent that it denied defendant's request for specific performance.

█ We disagree, however, with the trial justice's conclusion that the February 9 agreement falls within the strictures of the Rhode Island statute of frauds set forth in G.L.1956 § 9-1-4. This Court has held previously that an option contemplating the purchase of land, like a contract for the sale thereof, is enforceable if there is a sufficient memorandum in writing. *See Durepo v. May*, 73 R.I. 71, 76, 54 A.2d 15, 18 (1947). "A note or memorandum satisfies the statute if it provides the '[identity] of the seller and the buyer, their respective intention to sell and to purchase, such a description of the subject matter of the sale as may be applied to a particular piece of land, the purchase price, *and the terms of payments if the sale is not for cash.*'"

*Vigneaux v. Carriere*, 845 A.2d 304, 306 (R.I.2004) (quoting *Caito v. Juarez*, 795 A.2d 533, 536 (R.I.2002)).

Here, it is undisputed that the purchase-and-sales agreement prepared by defendant's attorney provided that the balance of the $179,000 purchase price "shall be paid to the Seller in cash or certified check * * * upon delivery of the deed at the closing." Yet plaintiff argues that the statute of frauds applies because the February 9 agreement contained no method of payment. She overlooks the fact, however, that she and her associate, Mr. Bard, drafted the February 9 agreement without aid or alteration by either the elder or younger Mr. Stamas. We refuse to allow plaintiff now to assail the viability of that agreement based on the absence of terms she and Mr. Bard chose, for whatever reason, not to include in the option contract. *See Vigneaux*, 845 A.2d at 307.

## The Purported Oral Modification

In granting relief to plaintiff, the trial justice relied on two alternate theories. First, referring to the specific facts of this case, she found that plaintiff's response of "okay" to Ms. DiMuro when she said she would fax plaintiff's lawyer a copy of the purchase-and-sales agreement signed by Mr. Stamas manifested an intent by plaintiff only to review the proposed purchase-and-sales agreement, and not to extend the deadline set forth in the option agreement. Second, as a principle of more universal application, the trial justice found that "an oral extension of an option deadline in a written option to purchase real estate is not enforceable." We address the latter and broader ruling first.

█ Although we agree with the trial justice that as a general rule time is of the essence in option contracts, *see Moulson v. Iannuccilli*, 84 R.I. 85, 90, 121 A.2d 662,

664 (1956); *Hicks v. Aylsworth,* 13 R.I. 562, 566 (1882), we reject her conclusion that an expiration provision in an option contract is, by its very essence, impervious to oral modification. In *Berube v. Montgomery,* 463 A.2d 158, 159 (R.I.1983), this Court held that once a document meets the requirements of the statute of frauds, "other elements may be supplied by oral agreement." There, we upheld the lower court's finding that an oral agreement to extend the time of performance did not offend the statute, but suggested that "there are some portions of an agreement subject to the statute of frauds which may be so essential to the heart of the transaction as to be not susceptible to modification by parol." *Id.* at 160. However, in the present case, plaintiff has supplied no authority or persuasive rationale to support the supposition that an explicit time element to an option contract qualifies as such.

We observe that other jurisdictions that more abundantly have explored option contracts and that have recognized that time is generally of the essence in them, nevertheless have excused an optionee's delay in exercising his or her option if attributable to, *inter alia,* an optionor's oral representations. *See, e.g., Wilson v. Bidwell,* 88 Cal.App.2d 832, 199 P.2d 439, 441–42 (Cal. Dist.Ct.App.1948) (holding that the optionor's statement, disclosed to the optionee through a third party, that "a few more days would not make any difference," excused the optionee's delay); *Unatin 7–Up Co. v. Solomon,* 350 Pa. 632, 39 A.2d 835, 836–37 (1944) (holding that a disclosure to the optionee that the optionor was about to enter upon the observance of sacred religious holidays that would extend beyond the option term excused the optionee's delay); *see also Lusco v. Tavitian,* 296 S.W.2d 14, 17 (Mo.1956) ("Notwithstanding that time is of the essence, the optionor by his words, acts or conduct may waive the requirement of acceptance or exercise of the option within the time stipulated."); *Smith v. Hues,* 540 S.W.2d 485, 488 (Tex. Civ.App.1976) (using similar language).

We note further, in the context of contracts for the sale of real estate, this Court has expelled any notion that an expiry date to a contract that has satisfied the statute of frauds is not susceptible to modification by waiver evidenced by parol, irrespective of whether parties intended to make time of the essence. *See, e.g., Fracassa v. Doris,* 814 A.2d 357, 363 (R.I.2003) (*Fracassa I* ) ("[L]ike any other provision to a contract, time is of the essence may be waived by express agreement or impliedly by conduct that contributes to the delay in performance."); *Thompson v. McCann,* 762 A.2d 432, 437 (R.I.2000) ("[E]ven '[a] provision making time of the essence may be waived either expressly or impliedly.' ") (quoting *Alk v. Lanini,* 61 Or.App. 158, 656 P.2d 367, 369 (1982)). We are not persuaded that the timeliness of an option contract, though perhaps presumed by the inclusion of a fixed expiration date, is any less susceptible to waiver than the performance date of a contract for the sale of land to which the parties undisputedly made time of the essence.

■ Next, we proceed to consider, in light of our case law, whether the purported oral modification lengthened the term in which Mr. Stamas could exercise his option to purchase Ms. Haydon's land beyond February 23, 2004. This Court has held in repeated pronouncements that "[w]aiver is the voluntary intentional relinquishment of a known right. It results from action or nonaction * * *." *Lajayi,* 860 A.2d at 687 (quoting *Haxton's of Riverside, Inc. v. Windmill Realty, Inc.,* 488 A.2d 723, 725 (R.I.1985)). Waiver that results from a party's actions may be expressed in the actions themselves or im-

plied from them, and "may arise where a person against whom the waiver is asserted has pursued such a course of conduct as to sufficiently evidence an intention to waive a right or where his [or her] conduct is inconsistent with any other intention than to waive it." *Sturbridge Home Builders, Inc. v. Downing Seaport, Inc.,* 890 A.2d 58, 65 (R.I.2005) (quoting *Ryder v. Bank of Hickory Hills,* 146 Ill.2d 98, 165 Ill.Dec. 650, 585 N.E.2d 46, 49 (1991)).

Importantly, as we noted in *1800 Smith Street Associates, L.P. v. Gencarelli,* 888 A.2d 46, 54–55, 55 n.4 (R.I. 2005), and held in *Sturbridge Home Builders,* 890 A.2d at 65–66, this Court will not lightly infer, to the extent that the record supports such an inference, the waiver of contractual provisions; evidence supporting an inference of waiver must be manifest and apparent. The party arguing that there has been a waiver bears the burden of showing clearly its existence, and, generally, the ultimate determination is one of fact. *Gencarelli,* 888 A.2d at 54–55, 55 n. 4. "[T]his Court will not disturb the findings of a trial justice sitting without a jury unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence * * *." *Imperial Casualty and Indemnity Co. v. Bellini,* 888 A.2d 957, 961 (R.I.2005) (quoting *Macera v. Cerra,* 789 A.2d 890, 892–93 (R.I.2002)).

We are satisfied that defendant has met this burden, and that the trial justice misconceived material evidence when she found that "[a]lthough she did agree to review a proposed Purchase and Sales Agreement, the Plaintiff never expressly stated that she would extend the deadline set forth in the option agreement." The record discloses the uncontradicted evidence that, on the date the option was set to expire, plaintiff responded "okay" to Ms. DiMuro's statement that she would "over-night" a purchase-and-sales agreement to defendant, who, at that time, was in Florida. We also observe that, during their conversation, plaintiff informed Ms. DiMuro that her attorney, Mr. Comery, would review the proposed purchase-and-sales agreement before it was signed, and she permitted Ms. DiMuro to transmit a copy of the proposed agreement by fax to Mr. Comery for that purpose. These statements and actions provide clear evidence of plaintiff's intent to extend the deadline and operate to excuse Mr. Stamas's delay in exercising his option.

Although we hold that the plaintiff expressly agreed to extend the deadline for the execution of a purchase-and-sales agreement, we recognize that the question of how long the time for performance may have been extended requires further findings of fact. We therefore remand the case to the Superior Court for a factual determination of: (1) how long the parties intended to extend the time for delivery of the purchase-and-sales agreement: a reasonable period of time, or some other period of time; and (2) whether the defendant, in fact, performed within that period.

### Conclusion

Accordingly, we affirm the judgment denying the defendant's request for specific performance, and vacate the judgment striking the *lis pendens* and ordering the defendant to execute all documents necessary to remove the cloud on title. We remand the papers in the case to Superior Court for further proceedings consistent with this opinion.