October 18, 2024

| | |
|---|---|
| Francesco Scotti | : |
| v. | : |
| Matthew Mimiaga. | : |

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Francesco Scotti                    :

v.                    :

Matthew Mimiaga.                    :

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.**  The plaintiff, Francesco Scotti, appeals from a March 13, 2023 amended order of the Superior Court, granting the motion for summary judgment filed by the defendant, Matthew Mimiaga, and ordering Mr. Scotti to release a notice of *lis pendens* that had been recorded with respect to a certain parcel of real property.  Mr. Scotti contends that the hearing justice erred in granting the motion for summary judgment because genuine issues of material fact remained regarding: (1) whether the option agreement was supported by consideration; (2) whether Mr. Scotti had properly and in a timely manner exercised the option to repurchase the property and whether there had been a waiver of certain deadlines; and (3) whether an essential term of the option agreement had been modified.

- 1 -

For the reasons set forth in this opinion, we vacate the amended order and the judgment of the Superior Court.

## I

## Facts and Travel

This action involves a contract to sell real property located at 300 Benefit Street in Providence, Rhode Island (the property). We have primarily derived the facts of this case from the complaint filed by Mr. Scotti seeking specific performance of an option agreement between him as optionee and Mr. Mimiaga as optionor, which agreement was part of a somewhat complicated real estate transaction that was initially consummated in 2015 and then underwent some adjustments in the ensuing years. Additional facts have been derived from (1) the exhibits attached to Mr. Mimiaga's memorandum in support of his motion for summary judgment (including *inter alia* Mr. Mimiaga's deposition) and (2) the affidavit of Mr. Scotti and the exhibits attached thereto, which were filed in the Superior Court on October 11, 2022. We relate below the salient facts set forth in those several documents.

It is undisputed (1) that, at the time when the parties first began negotiations for the sale of the property, Mr. Scotti was the owner of the property; and (2) that in August of 2015 he sold the property to Mr. Mimiaga. In addition, Mr. Scotti has averred that he "financed the purchase" of the property and that Mr. Mimiaga executed a promissory note to him in the amount of $870,000 on August 13, 2015,

- 2 -

on which date the property was conveyed to Mr. Mimiaga. Pursuant to the terms of the promissory note, Mr. Mimiaga agreed to make Mr. Scotti monthly, interest-only payments of $3,625 from September 1, 2015 until August 1, 2020, on which date the balance of the principal would be due.

Mr. Scotti alleged in his complaint that, as "part of the same transaction," Mr. Mimiaga granted him an option to repurchase the property in five years for $900,000 (the option agreement)—said option to be exercised before July 1, 2020. It was further Mr. Scotti's allegation that he notified Mr. Mimiaga in writing—by mailing a handwritten letter to him on June 1, 2020—that he was exercising his option to repurchase the property. Mr. Scotti further asserted that, due to issues largely relating to COVID-19, Mr. Mimiaga several times requested an extension of the length of time during which he could occupy the property.

During his deposition, Mr. Mimiaga testified that he was personally and actively involved in negotiations with Mr. Scotti for the purchase of the property, which negotiations took place at various times between May and August of 2015. In that deposition, Mr. Mimiaga testified that the transaction was initially structured as a purchase with Mr. Scotti providing the financing; he also stated that Mr. Scotti "asked to add an option." Mr. Mimiaga conceded in his deposition testimony that Mr. Scotti's request for an option was made "months before" the actual closing on the property. He added that he was unsure whether a purchase and sales agreement

- 3 -

was signed before the closing, but he indicated that he had never seen a signed copy of such an agreement. It was further Mr. Mimiaga's testimony that the parties agreed on $900,000 as the purchase price for the property.[1]

Mr. Mimiaga testified that he never received the June 1, 2020 handwritten letter from Mr. Scotti. In any event, the record reflects that there was communication between the parties on or about June 4, 2020. At that time, Mr. Scotti forwarded to Mr. Mimiaga an e-mail that he had received from the owner of a piece of property near the Benefit Street property seeking permission to trim some overhanging trees. In addition to forwarding the e-mail from the neighboring property owner, Mr. Scotti inquired of Mr. Mimiaga as to what his "plans" were. Mr. Mimiaga replied that same day, stating that he had been offered a faculty position at UCLA, which he had accepted; he further indicated that he did not plan to move to Los Angeles until the end of September of 2020. In the exchange of communications which occurred on or about June 4, 2020, Mr. Mimiaga also indicated that he wished to remain on the property until the end of September of that year, while continuing to make the mortgage payment of $3,625 per month. Mr. Mimiaga further stated that he wanted

---

[1]	Mr. Mimiaga testified at his deposition that he made a down payment of $20,000 and that he borrowed $850,000 from Mr. Scotti in connection with "financ[ing] the purchase." He further acknowledged that he signed a promissory note for $870,000, explaining that he had given Mr. Scotti "an extra $30,000" that was in effect a security deposit. (A later e-mail communication between the parties indicated that Mr. Mimiaga actually paid $30,000 as a down payment on the property in addition to a $20,000 security deposit.)

- 4 -

Mr. Scotti to "purchase back" the property from him, and he offered to do "several walkthroughs" of the property "to ensure that the house is up to [Mr. Scotti's] standards." On June 17, 2020, Mr. Scotti e-mailed Mr. Mimiaga that he was "game for having [Mr. Mimiaga] stay on" at the property and that he "would like to get together to inspect the condition of the property, at a time that is convenient for [Mr. Mimiaga]."

According to Mr. Mimiaga, he delivered a handwritten letter, dated September 1, 2020, to Mr. Scotti's office, indicating that he would not be moving to Los Angeles until October or November of that year. It was Mr. Mimiaga's testimony that he wanted an extension of the mortgage and of the due date for payment pursuant to the promissory note. Mr. Mimiaga also testified that, on September 13, 2020, he delivered a typewritten letter to Mr. Scotti's office. In that letter, Mr. Mimiaga stated that there was a possibility that he would be remaining in Providence "for the foreseeable future." He added that, if he did remain in Providence, he wanted to stay on the property, refinance his mortgage with another lender, and pay off the principal balance on the promissory note. However, Mr. Mimiaga also requested that, "for the time being," he be allowed to continue in his existing relationship with Mr. Scotti concerning the mortgage; and he also requested that he might continue to pay Mr. Scotti "the same amount of interest" on the loan. In his e-mail response on September 15, 2020, Mr. Scotti thanked Mr. Mimiaga for the update and stated: "Not

- 5 -

surprising that your plans need to be flexible.  I hope everything works out well for you."  Mr. Scotti concluded the e-mail by asking Mr. Mimiaga to continue to update him, so that he could "make arrangements in a timely manner."  Mr. Mimiaga went on to testify that he believed Mr. Scotti was referring to the mortgage payoff when he made reference to "mak[ing] arrangements."

On December 3, 2020, Mr. Mimiaga e-mailed Mr. Scotti apologizing for the fact that his plans kept "getting pushed back due to [COVID-19]."  He further indicated that his move to Los Angeles would likely occur around the end of January or February of the next year, and he added that his plan was to continue to pay Mr. Scotti "the same amount" if Mr. Scotti was amenable to that.  Months later, in June of 2021, Mr. Mimiaga e-mailed Mr. Scotti to alert him about a "potential investment opportunity" regarding a property in Los Angeles.  Mr. Scotti responded by e-mail the next day and stated that his financial situation was not nearly as strong as he "wish[ed] it were."  Mr. Scotti concluded his e-mail to Mr. Mimiaga by asking him: "Is it time to resolve the 300 Benefit situation?"

On June 21, 2021, Mr. Scotti e-mailed Mr. Mimiaga the following message: "It sounds like you are moving on to California.  I would like to take over 300 Benefit and am ready to return your deposit to you and finalize our agreement."  Mr. Mimiaga replied by e-mail the next day, noting that he had been unable to locate housing in Los Angeles and that, because he was able to work remotely, he wished

- 6 -

to remain in Providence "for the time being." He further stated that he needed to review the parties' contract to see what they "wrote down as far as [their] options" for him to either pay off the mortgage or "sell the property back to" Mr. Scotti. Mr. Mimiaga indicated that his preference "would be to refinance the mortgage" and pay off Mr. Scotti.

On June 23, 2021, Mr. Scotti responded to Mr. Mimiaga in an e-mail, noting that Mr. Mimiaga had contacted him a year earlier (June of 2020) and informed him that COVID-19 had made it difficult "to plan [his] departure from" the property. Mr. Scotti added that he was sympathetic to Mr. Mimiaga's needs and that he trusted that "the terms of our initial agreement would be extended and honored going forward." On July 3, 2021, Mr. Mimiaga responded that, upon his review of their contract, he wanted to "exercise [their] agreement for [him] to pay off the note."

On July 14, 2021, Mr. Scotti filed a complaint in Providence County Superior Court, seeking specific performance of the option agreement. Mr. Scotti sought an order compelling Mr. Mimiaga "to specifically perform his obligations under the Option Agreement and sell the Property to [Mr. Scotti] forthwith for the sum of $900,000, and awarding [Mr. Scotti] his costs and attorneys' fees." Mr. Scotti also caused to be recorded a "Notice of *Lis Pendens*" in the Providence Land Evidence Records.

Thereafter, Mr. Mimiaga filed an answer as well as a counterclaim, which

- 7 -

contained the following counts: (1) slander of title; (2) punitive damages for the "malicious act" of recording a *lis pendens*; and (3) injunctive relief. In the counterclaim, Mr. Mimiaga contended that Mr. Scotti had refused to comply with his request for a payoff statement that would allow him to refinance the mortgage. He contended that the subsequent recording of a *lis pendens* by Mr. Scotti was malicious in that it prevented him from either refinancing the mortgage at a lower interest rate or from selling the property. He further contended that, when the *lis pendens* was recorded, the option agreement had already expired. He requested an injunction ordering Mr. Scotti to (1) release the *lis pendens* that he had recorded with respect to the property; (2) provide Mr. Mimiaga with a payoff statement; (3) discharge the mortgage upon receiving funds sufficient to pay off the total amount due under the promissory note; and (4) reimburse Mr. Mimiaga for the costs associated with the litigation.

Subsequently, on August 24, 2022, Mr. Mimiaga filed a motion for summary judgment. In his memorandum in support of the motion, he contended that the option agreement: (1) lacked consideration; (2) failed to comply with the statute of frauds; (3) was not properly exercised; (4) had expired because time was of the essence; and (5) was not modified by either an express or an implied waiver that would extend the deadline to exercise the option. He further contended that "the

undisputed evidence establishes that [he] never received the Handwritten Letter[2] or any other indication—formal or otherwise—that [Mr. Scotti] desired to exercise the option, until one (1) year after the option had expired." (Emphasis omitted.)

On October 11, 2022, Mr. Scotti filed an objection to the motion for summary judgment, in which he contended that the arguments contained in the motion were "either predicated on 'facts' that are demonstrably untrue" or raised "issues of fact that preclude resolution by summary judgment." In Mr. Scotti's affidavit, which was filed along with his objection, he asserted that the "considerable discount" in the purchase price of the property constituted the consideration for the option. In addition, he pointed out that, although an earlier version of the option agreement contained a clause indicating that time was of the essence, that clause had been specifically omitted from the final version of the agreement. He further asserted that his delay in repurchasing the property was the result of multiple requests made by Mr. Mimiaga, who sought "to extend his tenure" at the property due to "job changes, Covid-related issues," and the difficulty which Mr. Mimiaga had experienced relative to relocating to California.

In his reply to Mr. Scotti's objection to the motion for summary judgment, Mr. Mimiaga contended that, "without any further exchange, promise, concession,

---

[2]    It is undisputed that this reference to "the Handwritten Letter" relates to the letter which Mr. Scotti asserted that he mailed to Mr. Mimiaga on June 1, 2020.

or consideration," his acceptance of the option agreement had been required "as a condition to proceed with the sale *after* the Parties had already agreed to the material terms of the transaction." (Emphasis in original.) He further asserted that Mr. Scotti could not present any evidence that Mr. Mimiaga had received the letter constituting notice that Mr. Scotti intended to exercise the option.

A hearing on the motion for summary judgment was held on October 25, 2022. On January 23, 2023, the hearing justice issued a written decision granting Mr. Mimiaga's motion for summary judgment. In his decision, the hearing justice held that, because "consideration for an option must be separate and distinct from consideration for the sale" and because the purchase price for the property "had already been established before the option was even considered," the option agreement was unsupported by separate consideration. In addition, the hearing justice turned to the question of whether Mr. Scotti had properly exercised the option. He explicitly stated that acceptance under an option contract is not operative until such acceptance is delivered; in this case, he ruled that there was no evidence that Mr. Scotti's June 1, 2020 handwritten letter had been delivered. The hearing justice specifically found that the attempt of Mr. Scotti to exercise the option "was improper because [he] did not ensure that his letter was delivered, nor did he even attempt to inform [Mr. Mimiaga] in some other fashion." The hearing justice further found that Mr. Scotti "did not act timely" and that "[i]f [Mr. Scotti] wanted to

repurchase the Property, he could have tendered funds for that purpose on or before September 1, 2020 and leased the Property to [Mr. Mimiaga] as he did previously." The hearing justice concluded that, because "Rhode Island law requires the timely taking of a benefit of an option, the [c]ourt agrees with [Mr. Mimiaga]." The hearing justice also concluded that, "[w]ithout an express agreement waiving the provisions" of the option agreement, there could be "no express waiver as a matter of law." He further found that, because Mr. Mimiaga's e-mails did not appear to grant Mr. Scotti more time to repurchase the property and the communications did not show a refusal by Mr. Mimiaga to tender the property to Mr. Scotti, Mr. Mimiaga "did not impliedly waive any term contained in the Option."

On February 22, 2023, an order granting the motion for summary judgment and ordering Mr. Scotti to release the *lis pendens* within forty-eight hours was entered. On February 24, 2023, Mr. Scotti filed a motion to stay the order to release the *lis pendens* during the pendency of his appeal to this Court. That motion was denied on March 13, 2023; and on that same day, the February 22, 2023 order was amended to state that March 15, 2023 would be the deadline for the release of the *lis pendens*. Mr. Scotti timely appealed the March 13, 2023 amended order.[3]

---

[3] Final judgment as to Mr. Scotti's complaint did not enter until January 24, 2024.

- 11 -

## II

## Issues on Appeal

On appeal, Mr. Scotti contends that a genuine issue of material fact exists as to (1) whether the option agreement was supported by consideration; (2) whether Mr. Scotti exercised his option when he mailed the June 1, 2020 handwritten letter to Mr. Mimiaga; and (3) whether, unless the law otherwise conclusively resolves the issue, the extensions of time requested by Mr. Mimiaga (and granted by Mr. Scotti) "extended or waived the window" for Mr. Scotti to exercise his option under the agreement.

## III

## Standard of Review

This Court reviews Superior Court rulings on summary judgment motions in a *de novo* manner. *Papudesu v. Medical Malpractice Joint Underwriting Association of Rhode Island*, 18 A.3d 495, 497 (R.I. 2011). In performing our review, "we utilize the same standards and rules used by the hearing justice." *DiMaggio v. Tucker*, 288 A.3d 981, 985 (R.I. 2023) (internal quotation marks omitted). This Court has stated that "[w]e will affirm the grant of summary judgment only if we conclude, after viewing the evidence in the light most favorable to the nonmoving party, that there is no genuine issue of material fact to be decided and that the moving party is entitled to judgment as a matter of law." *Empire Acquisition Group, LLC v. Atlantic*

*Mortgage Company, Inc.*, 35 A.3d 878, 882 (R.I. 2012) (internal quotation marks, brackets, and deletion omitted). When a motion for summary judgment is before a court, "[t]he motion justice must refrain from weighing the evidence or passing upon issues of credibility." *DeMaio v. Ciccone*, 59 A.3d 125, 130 (R.I. 2013) (internal quotation marks omitted). We have made it clear that "the purpose of the summary judgment procedure is issue finding, not issue determination." *Id.* We have also noted that "summary judgment should occasion the termination of a case only where it is absolutely clear that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Estate of Giuliano v. Giuliano*, 949 A.2d 386, 394 (R.I. 2008) (internal quotation marks omitted).

This Court "has further stated that demonstrating mere factual disputes will not defeat summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *DiMaggio*, 288 A.3d at 985 (internal quotation marks and brackets omitted). In addition, we have stated that the opposing party "by affidavits or otherwise * * * [has] an affirmative duty to set forth specific facts showing that there is a genuine issue of material fact." *Bourg v. Bristol Boat Co.*, 705 A.2d 969, 971 (R.I. 1998).

**IV**

**Analysis**

**A**

**Consideration**

On appeal, Mr. Scotti first contends that a genuine issue of material fact exists as to whether the option agreement was supported by sufficient consideration. Specifically, Mr. Scotti asserts that the hearing justice "failed to fairly consider the record evidence," which included e-mail correspondence as well as Mr. Mimiaga's own deposition testimony "that tended to prove (directly and circumstantially) that the parties negotiated the terms of the sale, including the Option Agreement, for more than three months before the closing." (Emphasis omitted.) He contends that "all the parties' promises were made as part of a single transaction" and that the option agreement "continued to be an integral component of the overall transaction * * *." Mr. Scotti also contends that Mr. Mimiaga's claim that the option agreement was in effect an afterthought is "belied by the record" in that multiple e-mails between the parties and their attorneys between May of 2015 and the closing in August of 2015 reveal that the parties negotiated the agreement and "made substantive edits to the [option agreement's] terms months before the real estate closing * * *." (Emphasis omitted.)

Mr. Scotti further contends that there is no requirement that the option

- 14 -

agreement be supported by "additional or separate consideration;" he goes on to argue that, even if there were such a requirement, the steeply discounted price for the property and the financing arrangement that he extended to Mr. Mimiaga constituted sufficient separate consideration.

Mr. Mimiaga contends that there is no evidence of consideration for the option agreement; rather, he asserts, the evidence shows that Mr. Scotti "demanded" that Mr. Mimiaga execute the option agreement "after the Parties had already agreed on the purchase price and financing terms." Mr. Mimiaga specifically argues that "there was no consideration in exchange for [Mr. Scotti's] subsequent insistence of an option after all of the transaction's terms had been agreed upon between the Parties."

While we do not deem it necessary in this case to pass upon the issue of whether separate consideration is necessary for an option agreement, we note that the courts of the several states are not uniform as to that issue.[4] We need not pass upon that issue in this case because the record contains a two-page written document signed by both parties entitled "Option Agreement." That option agreement clearly states that the option to purchase the specified real property was supported by "good and valuable consideration."[5] In our judgment, that statement is conclusive of the

---

[4]    *See generally* Joseph M. Perillo, Contracts § 4.6 at 165-66 (7th ed. 2014).

[5]    The words "good and valuable consideration" appear in the very first sentence of the option agreement. That sentence in its entirety reads as follows: "For good and valuable consideration, **Matthew Mimiaga** (the Grantor) grants to **Francesco**

- 15 -

consideration issue. As a result, while this case involves other issues that remain viable, the consideration issue is no longer a live issue and should not be further litigated.

## B

### The Exercise of the Option

Mr. Scotti next contends that his June 1, 2020 handwritten letter and subsequent correspondence create a genuine issue of material fact concerning whether Mr. Mimiaga knew that Mr. Scotti had decided to exercise his option. Mr. Scotti avers that the hearing justice erred when he accepted Mr. Mimiaga's "statement that he never received delivery of [Mr. Scotti's] Letter and found that [Mr. Scotti] did not effectively elect his Option." He further points out that the option agreement did not specify the means by which the option was to be exercised and that he notified Mr. Mimiaga that he was exercising the option by means of the handwritten letter which he mailed on June 1, 2020. He contends that a notice which is sent by regular mail implicates a presumption of receipt and that, because certain evidence indicated that Mr. Mimiaga received the letter or had knowledge of it, whether Mr. Mimiaga had sufficiently rebutted the presumption of receipt was a

---

**Scotti**, his heirs and assigns (the Grantee) an option to purchase the real property, with all buildings and improvements thereon, located at 300 Benefit Street, Providence, R.I., which has been designated at [*sic*] Lot 488 on Plat 12 of the Assessor's Map of th[e] City of Providence."

- 16 -

genuine issue of material fact.

Mr. Mimiaga asserts that acceptance under an option contract is operative only when it is received by the optionor and that, therefore, it was incumbent upon Mr. Scotti to ensure that Mr. Mimiaga received the handwritten letter. He contends that the undisputed evidence establishes that the letter was not received by him until after Mr. Scotti commenced the instant action and that Mr. Scotti did not send the handwritten letter by certified mail, e-mail, or any other verifiable method of delivery. In addition, he contends that, even if he had received the letter, a notice of an intent to exercise the option agreement is not an exercise of the option and that, pursuant to the terms of the option agreement, "there must have been actual performance, *to wit*, a tender of payment and delivery of the deed within the specific time period."

This Court has long adhered to the presumption that, "if notice was mailed, noticed was received." *Degasparre v. Fay Servicing, LLC*, 288 A.3d 146, 152 (R.I. 2023); *see also Harris v. Turchetta*, 622 A.2d 487, 489 (R.I. 1993) (stating that, when evidence is presented to a hearing justice that could support a finding that notice had been sent, an opponent's statement that such notice was not received is "insufficient to overcome the presumption that mail regularly sent * * * was received"); *Larocque v. Rhode Island Joint Reinsurance Association*, 536 A.2d 529, 532 (R.I. 1988) (noting that "receipt may be presumed by proof of an ordinary

- 17 -

mailing").

We have recognized the "fundamental principle that once the party seeking summary judgment has alleged the absence of any disputed issues of material fact, the opposing party, to avoid summary judgment, must come forward with proof sufficient to establish the existence of a specific, material, triable fact." *DiMaggio*, 288 A.3d at 985 (internal quotation marks and brackets omitted). Taking into account this particular set of facts, Mr. Scotti's attestation that he mailed the June 1, 2020 handwritten letter notifying Mr. Mimiaga of his intent to exercise his option is sufficient to establish an issue of material fact. In addition, Mr. Scotti provided deposition testimony that he "[d]ropped [the letter] in the mailbox in Jamestown behind the post office." Mr. Scotti also points to a message from Mr. Mimiaga "just three days after [Mr. Scotti] mailed the letter * * *;" that message stated that Mr. Mimiaga "would love" for Mr. Scotti to repurchase the property. (Emphasis omitted.)

Notably, these assertions by Mr. Scotti create a presumption that the letter was received. *See Harris*, 622 A.2d at 489. Although said presumption is rebuttable, it follows that it was then incumbent upon Mr. Mimiaga to offer evidence that he did not receive the handwritten letter. *See id.* In our view, the record clearly indicates that a genuine issue of material fact remained for a factfinder to resolve, which consequently should not have been resolved on a motion for summary judgment. *See*

*Larocque*, 536 A.2d at 532 (stating that "the question of the credibility of the rebutting testimony is for the trier of fact to decide"). Accordingly, it is our view that the hearing justice erred in granting summary judgment for Mr. Mimiaga with respect to the exercise of the option.

## C

### Timeliness and Modification

Mr. Scotti's final contention is that Mr. Mimiaga's "repeated requests" to stay on the property created genuine issues of material fact as to whether Mr. Scotti could, as optionee, repurchase and take possession of the property after September of 2020. Specifically, Mr. Scotti asserts that Mr. Mimiaga's conduct "expressly and implicitly extended the time for" Mr. Scotti's performance. In addition, he asserts that, because it was the "conduct, representations, and delays" of Mr. Mimiaga that contributed to his "inability to move on his [o]ption election," these circumstances "operate to waive any timeliness requirement * * *." Mr. Scotti contends that the hearing justice "erroneously relied" on the fact that Mr. Scotti never tendered the funds to repurchase the property.

Additionally, Mr. Scotti asserts that, even if the option agreement was never modified, "time was never of the essence," explaining that Mr. Mimiaga overlooks the "fact that there is no time of the essence language in the Agreement and that the exclusion of such language was intentional." (Emphasis omitted.)

- 19 -

Mr. Mimiaga argues that Mr. Scotti is unable to proffer evidence to establish that Mr. Mimiaga either expressly or impliedly waived any provision or terms of the option agreement. Mr. Mimiaga specifically contends that "there is no writing evidencing an agreement to enlarge time and [Mr. Scotti] cannot establish the existence of [an express] waiver." Moreover, he contends that "[t]here is no evidence of either an unequivocal or decisive act" on his part that would support an implied waiver.

We have recognized the general rule that "time is of the essence in option contracts * * *." *Haydon v. Stamas*, 900 A.2d 1104, 1111 (R.I. 2006). However, we have also stated that "like any other provision to a contract, time is of the essence may be waived by express agreement or impliedly by conduct that contributes to the delay in performance." *Fracassa v. Doris*, 814 A.2d 357, 363 (R.I. 2003). This Court has noted that "evidence supporting an inference of waiver must be manifest and apparent. The party arguing that there has been a waiver bears the burden of showing clearly its existence, and, generally, the ultimate determination is one of fact." *Haydon*, 900 A.2d at 1113. We have further made clear that an "implied waiver of a legal right must be proved by a clear, unequivocal, and decisive act of the party who is alleged to have committed waiver." *Sturbridge Home Builders, Inc. v. Downing Seaport, Inc.*, 890 A.2d 58, 65 (R.I. 2005) (brackets omitted) (quoting *Ryder v. Bank of Hickory Hills*, 585 N.E.2d 46, 49 (Ill. 1991)).

Although time is generally of the essence in option agreements, it is significant in the instant action that a thorough review of the documents in the record reveals that any language about time being of the essence was specifically omitted from the final version of the option agreement. Moreover, even if there is a term in a contract that relates to the time for performance, that does not cause time to be of the essence merely by its presence. *See 1800 Smith Street Associates, LP v. Gencarelli*, 888 A.2d 46, 52 (R.I. 2005) (stating that "explicit time limits standing alone and without more do not indicate that the times fixed for performance are intended by the parties to be a material or an essential part of their agreement") (internal quotation marks and brackets omitted). This Court has also noted that, while "an optionee must be ready to pay the price as fixed in the option after he has accepted," the optionee need not tender the sale price contemporaneously with the acceptance of an option. *Butler v. Richardson*, 74 R.I. 344, 351, 60 A.2d 718, 723 (1948).

In our view, based on the record before us and viewing the facts in the light most favorable to Mr. Scotti, whether time was of the essence remained a genuine issue of material fact, precluding summary judgment. We reach that conclusion due to the fact that Mr. Scotti points to communications between the parties during the negotiation stage of the real estate transaction, which he contends show that any clause pertaining to time being of the essence was intentionally omitted from the

final version of the option agreement.

It is true that the record shows that the hearing justice was correct in stating that the exchange of correspondence between the parties does not expressly mention an extension of the time to purchase the property. However, we are of the opinion that the communications from Mr. Mimiaga, including but not limited to his communication with Mr. Scotti on June 4, 2020 (wherein he requested that he might continue to stay on the property until the end of September of 2020 and also that he wished for Mr. Scotti to purchase back the property from him), could be viewed as evidence of an implied waiver. Although neither the option agreement nor its expiration was expressly mentioned in any of the correspondence from June of 2020 until July of 2021, the correspondence does give rise to a genuine issue of material fact as to what the parties intended when extensions of time were requested and subsequently granted. Accordingly, it is our conclusion that the hearing justice erred in resolving the waiver issue on summary judgment.

## V

## Conclusion

For the reasons set forth in this opinion, we vacate the Superior Court's amended order and its judgment. The record may be returned to that tribunal for further proceedings consistent with this opinion.

- 22 -



**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Francesco Scotti v. Matthew Mimiaga. |
| **Case Number** | No. 2023-91-Appeal. (PC 21-4667) |
| **Date Opinion Filed** | October 18, 2024 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Brian P. Stern |
| **Attorney(s) on Appeal** | For Plaintiff: Robert Clark Corrente, Esq. |
| | For Defendant: William H. Wynne, Esq. |